DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Cincinnati, Inc., commenced this original action in mandamus seeking an order requiring respondent Industrial Commission of Ohio ("commission") to vacate its award of permanent total disability ("PTD") compensation to respondent Robert W. Lowe ("claimant") and to enter an order denying said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C), and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In that decision, the magistrate found that the September 27, 2002 report of Dr. Swanson was some evidence upon which the commission could rely in granting PTD.
 {¶ 3} Relator has filed objections to the magistrate's decision essentially arguing that Dr. Swanson's report was not some evidence upon which the commission could rely because Dr. Swanson did not expressly state that the claimant was incapable of any sustained remunerative employment. Rather, Dr. Swanson stated only "I do not recommend [claimant] ever returning to work."
 {¶ 4} Relator also points out that the claimant was subsequently employed by the Argosy Casino and that he quit because of reasons unrelated to the conditions allowed in the claim. Therefore, relator argues that claimant must have been capable of sustained remunerative employment if only the allowed conditions are considered. Given these facts, relator contends it was unreasonable for the magistrate to conclude that the commission's decision was supported by some evidence. We disagree.
 {¶ 5} First, we do not believe that the magistrate's interpretation of Dr. Swanson's report is unreasonable. When read in its entirety, it is apparent that Dr. Swanson did not believe that claimant was capable of sustained remunerative employment even though he did not use those exact words.
 {¶ 6} Second, although relator was certainly justified in arguing before the commission that claimant's subsequent employment with Argosy Casino supported its contention that the claimant was capable of sustained remunerative employment, this argument is not persuasive in mandamus. It was clearly within the commission's fact-finding discretion to interpret Dr. Swanson's report as it did. This report is some evidence upon which the commission could rely in support of its grant of PTD. Although there was conflicting evidence before the commission, this court does not re-weigh the evidence in mandamus.
 {¶ 7} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own including the findings fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ of mandamus denied.
Brown, P.J., and Sadler, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
[State ex rel.] Cincinnati, Inc., : Relator, : v.
 : No. 04AP-241 Robert W. Lowe and The Industrial :
 (REGULAR CALENDAR) Commission of Ohio, :
 Respondents. :
 MAGISTRATE'S DECISION Rendered on September 30, 2004 Dinsmore Shohl, LLP, Gary E. Becker and Theresa M. Muhic, for relator.
Weisser and Wolf, and Lisa M. Clark, for respondent Robert W. Lowe.
Jim Petro, Attorney General, and Shareef Rabaa, for respondent Industrial Commission of Ohio.
IN MANDAMUS
 {¶ 8} In this original action, relator, Cincinnati, Inc., requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its award of permanent total disability ("PTD") compensation to respondent Robert W. Lowe and to enter an order denying said compensation.
Findings of Fact:
 {¶ 9} 1. On November 13, 1998, Robert W. Lowe ("claimant") sustained an industrial injury while employed as a "machine builder" with relator, a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for: "strain/sprain left shoulder rotator cuff tear; aggravation of pre-existing arthritis of left glenohumeral joints," and is assigned claim number 98-593871.
 {¶ 10} 2. Claimant has undergone several surgeries to his left shoulder as a result of his industrial injury. On August 21, 2001, claimant underwent total left shoulder replacement surgery (total joint arthroplasty of the left shoulder). The August 21, 2001 surgery was performed by Dr. Lim.
 {¶ 11} 3. On January 29, 2003, claimant filed an application for PTD compensation. In support, relator submitted a September 27, 2002 office note authored by orthopedic surgeon Jim Swanson, M.D., who had performed several surgeries relating to claimant's left shoulder. Claimant was returned to Dr. Swanson's care following Dr. Lim's surgery. Dr. Swanson's September 27, 2002 office note (report) states:
Subjective:
 CC: 56-year-old male presents for follow-up concerning his left shoulder.
HPI:
The left shoulder continues to be painful and stiff despite the arthroplasty. Dr. Lim has left town for another practice location, and wishes me to continue care. Mr. Lowe doesn't feel he is capable of working with his shoulder. He can do a few light things around the house, but once he starts anything involving repetition or lifting his pain worsens. He still uses pain medicine intermittently. He recently had an examination by Dr. Meyn. I reviewed that report. He feels he has reached MMI and has PPI.
* * *
Objective:
* * *
Exams:
LEFT SHOULDER examination: Inspection: surgical wound — superior wound (healed); no erythema; no edema; visible atrophy of the paraspinous muscles, deltoid;
Palpation: pain elicited over the lateral clavicle, at the greater tuberosity and proximal of the humerus, anteriorly, and posteriorly; no warmth: crepitus palpable over the anterior and lateral acromion and over the subacromial bursa; no masses;
Neurovascular: normal sensory exam of axilliary, musculocutaneous, median radial and ulnar nerves distally to light touch or pain; sensory deficit noted; normal pulse and capillary refill noted distally;
Muscular Strength: 4/5 flexors; 4/5 extensors; 4/5 abductors; 4/5 adductors; 4/5 external rotators; 4/5 internal rotators;
Range of Motion: limited active ROM with external rotation in neutral (to 0 degrees), internal rotation with hand to hip, glenothumeral abduction (to 60 degrees), extension (to 30 degrees), flexion (to 90 degrees), abduction (to 80 degrees), adduction (to 30 degrees), internal rotation at 90 degrees (to 0 degrees), and external rotation at 90 degrees (to 0 degrees); limited passive ROM; and ROM pain is present;
Maneuvers:
(+) Yergason test; (+) Speed's test; (+) drop arm test; negative Anterior Drawer; negative Posterior Drawer; (-) scapular winging test; The shoulder joint is reduced.
* * *
TESTS/PROCEDURES: Tests and/or procedures which may be ordered/performed in the future include: joint injection corticosteroid and Bursal Injection subacromial.
MEDICATIONS: I have prescribed the following medication. Percocet 5/325 mg, 1-2 po q 4-6 hr pm pain, #80 and WITH INTERMITTENT REFILLS MONTHLY OR BI-MONTHLY TO CONTROL CHRONIC PAIN. HE MEET'S THE CRITERIA OF CHRONIC INTRACTABLE PAIN REQUIRING NARCOTICS FOR CONTROL. Narcotic risks and precautions were discussed. * * *
* * *
WORK:
I do not recommend ever returning to work. MMI status has been achieved effective 9-27-02. 28% Upper Extremity Permanent Partial Impairment is present according to the AMA Guides to Impairment, 5th edition. (Equivalent to 17 % whole person). See Attached worksheet. He will require twice yearly visits to me to refill pain medication and monitor for signs of prosthetic loosening or infection. The total joint will need to be routinely followed with yearly x-rays of the shoulder.
(Emphasis sic.)
 {¶ 12} 4. On April 30, 2003, claimant was examined on relator's behalf by Bernard B. Bacevich, M.D. Dr. Bacevish's report is composed of several sections. Under a section captioned "occupational history," Dr. Bacevich wrote:
* * * Last year he attempted to do a security job position at Argosy Cassino [sic] but he states that the standing and walking caused him to have left shoulder pain. Picking up bags of chips with the right arm also caused left shoulder pain and then he had problems with swelling of his right lower leg and ankle where he had previous cardiac bypass surgery. In addition, the smoky environment was bothersome and with his cardiac condition he wanted to avoid such a smoke environment. He apparently only did that job for a couple of months. Currently he is not employed.
 {¶ 13} Under a section captioned "summary and opinions," Dr. Bacevich wrote:
It is my opinion that the allowed conditions in this claim do not preclude this man from engaging in any sustained remunerative employment. It is my opinion that this man is capable of performing work in a sedentary level but only with use of his right arm. It is my opinion that he has to be in a position where he does not use his left arm. * * *
 {¶ 14} 5. On May 15, 2003, claimant was examined on behalf of the commission by Steven S. Wunder, M.D. Dr. Wunder reported:
Based upon the AMA Guides to the Evaluation of Permanent Improvement,
fourth edition, for the diagnoses of left shoulder sprain/strain, rotator cuff tear, and aggravation of pre-existing arthritis of the left glenohumeral joint, he would have a 27% impairment to the whole person. * * *
The Physical Strength Rating form has been completed. He would have functional capacities using the right arm only in the realm of sedentary to light. He could use the left arm for no more than 2 to 3 pounds of lifting and primarily as a helper. He has no functional restrictions with the right arm, axial skeleton or lower extremities. There appear to be other extenuating circumstances that may affect his ability to work relative to non-allowed conditions with coronary artery disease and a history of severe anxiety and depression.
(Emphasis sic.)
 {¶ 15} 6. On the physical strength rating from, Dr. Wunder indicated that claimant could perform sedentary work.
 {¶ 16} 7. The commission requested an employability assessment report from Nancy J. Borgeson, Ph.D., a vocational expert. The Borgeson report responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed conditions, identify occupations which the claimant may reasonably be expected to perform, (A) immediately and/or (B) following appropriate academic remediation, or brief skill training.
 {¶ 17} Indicating acceptance of Dr. Wunder's report and responding to the above query, Borgeson lists the following employment options:
 Order Clerk, food bev. * * * Charge Account Clerk * * *
 Inspector, film * * * Cashier II * * * Information Clerk * * *
 Surveillance System Monitor * * *
 With brief training:
 Clerk, general * * * Referral and Information Aide * * * Checker
 * * * Receptionist * * *
 {¶ 18} 8. Relator submitted a vocational report, dated May 18, 2003, from Howard L. Caston, Ph.D. Dr. Caston wrote:
It is, therefore, my opinion that this individual has some basic employability. He has skills related to design, drafting, supervision, troubleshooting, inspecting, and related jobs. There may be some occupations that could be located that could be modified. These could include: telephone answering, message taking, file clerk, and security systems monitor. Attached to this narrative is a sample of those jobs.
 {¶ 19} 9. Following an October 1, 2003 hearing, a staff hearing officer ("SHO") issued an order granting the PTD application. The SHO's order states:
Permanent and total disability compensation is hereby awarded from 09/27/2003 [sic]. * * *
The injured worker was examined by Dr. Wunder at the request of the Industrial Commission with respect to the allowed orthopedic conditions in the claim. Dr. Wunder opined that the injured worker has reached maximum medical improvement and has a resulting 27% whole person permanent impairment. Dr. Wunder completed a physical strength rating form which he attached to his medical report wherein he indicated that the injured worker is capable of physical work activity at a sedentary level.
The employer submitted the medical report of Dr. Bacevich for consideration. Dr. Bacevich essentially agreed with the opinion of Dr. Wunder and opined that the injured worker has a 28% whole person permanent impairment considering the allowed conditions. He also opined that the injured worker would be capable of performing sedentary employment provided that he not perform any work activity with the left upper extremity.
The injured worker testified at hearing that he continues to suffer from pain despite four surgical procedures on his left shoulder. The injured worker testified that the pain that he experiences is so severe that it interferes with his ability to ambulate as well as his ability to concentrate. The injured worker further testified that he is unable to take care of his activities of daily living and needs help from his wife in dressing and feeding. The injured worker further testified that he attempted a return to work in July, 2002 as a security guard, but was unable to continue to perform the job duties as a result of his difficulty with walking and pain.
The injured worker submitted the office notes of his treating physician, Dr. Swanson, for consideration. Dr. Swanson opined on 09/27/2002 that the injured worker is unable to perform employment as a result of the allowed conditions.
The Staff Hearing Officer finds that the injured worker is unable to return to his former position of employment and is incapable of engaging in any other form of sustained remunerative employment considering the severity of his medical impairment in combination with the resulting pain from which he suffers as a result of the allowed conditions. Therefore, the injured worker's application for permanent and total disability compensation is granted.
This order is based on the office note of Dr. Swanson dated 09/27/2002 and the injured worker's testimony at hearing.
 {¶ 20} 10. On November 8, 2003, the SHO mailed a corrected order that begins the payment of PTD compensation on September 27, 2002, the date of Dr. Swanson's office note or report.
 {¶ 21} 11. On December 17, 2003, the commission mailed an order denying relator's request for reconsideration of the SHO's order awarding PTD compensation.
 {¶ 22} 12. On March 4, 2004, relator, Cincinnati, Inc., filed this mandamus action.
Conclusions of Law:
 {¶ 23} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 24} The commission, through its SHO, found that claimant is permanently and totally disabled based solely upon the allowed conditions of the industrial claim. Under such circumstances, the commission is not required to consider or address the vocational factors. Ohio Adm. Code4121-3-34(D)(2)(a) sets forth the commission's guideline for this type of PTD determination:
If, after hearing, the adjudicator finds that the medical impairment resulting from the allowed condition(s) in the claim(s) prohibits the claimant's return to his former position of employment as well as prohibits the claimant from performing any sustained remunerative employment, the claimant shall be found to be permanently and totally disabled, without reference to the vocational factors listed in paragraph (B)(3) of this rule.
 {¶ 25} In determining that the claimant is permanently and totally disabled, the commission must rely upon expert medical opinion. In so doing, the commission relied exclusively upon Dr. Swanson's September 27, 2002 report.
 {¶ 26} At oral argument before this magistrate on September 22, 2004, relator's counsel argued that Dr. Swanson's report is not some evidence upon which the commission can rely to support its PTD award. Arguably, this argument was raised for the first time in relator's reply brief wherein relator asserted that Dr. Swanson's report was "insufficient."
 {¶ 27} According to relator's counsel at oral argument, Dr. Swanson's statement "I do not recommend ever returning to work," is insufficient as an opinion that claimant is medically unable to perform any sustained remunerative employment as a result of the allowed conditions of the claim. Relator further argues that the SHO was incorrect in stating that "Dr. Swanson opined on 09/27/2002 that the injured worker is unable to perform employment as a result of the allowed conditions." The magistrate disagrees with relator's argument.
 {¶ 28} While the September 27, 2002 report of Dr. Swanson does not list the allowed conditions of the industrial claim, it is undisputed that Dr. Swanson performed surgeries to claimant's left shoulder and that claimant was returned to Dr. Swanson's care following the total left shoulder replacement surgery on August 21, 2001. In his September 27, 2002 report, Dr. Swanson indicates that claimant presents for follow-up concerning his left shoulder. Dr. Swanson examined the left shoulder and recorded his findings in great detail. Dr. Swanson indicated that claimant meets the criteria for chronic intractable pain requiring narcotics control. It is clear that the pain is associated with the left shoulder. Dr. Swanson then states "I do not recommend ever returning to work." He concludes that claimant will require two yearly visits to refill pain medications and monitor signs of prosthetic loosening or infection.
 {¶ 29} In the magistrate's view, it is difficult to see how relator can suggest that Dr. Swanson was examining, prescribing, and opining on anything other than the allowed conditions of the industrial claim.
 {¶ 30} Moreover, there are no magical words that a doctor must use to produce some evidence from a medical expert that the claimant is medically unable to perform any sustained remunerative employment as a result of the allowed conditions of the claim. Here, Dr. Swanson's statement "I do not recommend ever returning to work," read in the context of the entire report, compellingly conveys an opinion supporting the commission's interpretation. Clearly, it was within the commission's fact-finding discretion to interpret Dr. Swanson's report as it did. See State exrel. Jeep Corp. v. Indus. Comm. (1991), 62 Ohio St.3d 64; State ex rel.Copeland Corp. v. Indus. Comm. (1990), 53 Ohio St.3d 238.
 {¶ 31} Accordingly, the magistrate finds, contrary to relator's assertion, that the report of Dr. Swanson is some evidence supporting the commission's PTD award.
 {¶ 32} In its opening brief, relator captions two arguments in support of a writ of mandamus. The first argument is as follows:
The Industrial Commission abused its discretion in granting the application for permanent total disability benefits in that the order is void of any proof that respondent Lowe is incapable of performing jobs as listed by vocational evaluators Borgeson and Caston.
(Relator's brief at 4; emphasis omitted.)
 {¶ 33} The argument in relator's brief that follows the above caption asserts that the commission "did not adequately address the fact that Claimant did, in fact, return to work within the last year as a security guard at the Argosy Casino." (Relator's brief at 5.) According to relator, the record compels the conclusion that claimant quit his Argosy Casino job due to nonallowed conditions.
 {¶ 34} It is fundamental that this court does not reweigh the evidence for the commission in mandamus. At the administrative proceeding before the commission, it may have been appropriate for relator to attack the credibility of Dr. Swanson's report by pointing out claimant's experience at Argosy Casino. Apparently, the commission was not persuaded that the Argosy Casino experience detracted from the reliability of Dr. Swanson's disability opinion. This was a call for the commission to make. Relator's argument in this action regarding Argosy Casino improperly invites this court to reweigh the evidence.
 {¶ 35} According to relator, claimant's work at Argosy Casino in 2002 highlights the conclusion of vocational assessors Caston and Borgeson, as well as Drs. Bacevich and Wunder. (Relator's brief at 5.) According to relator, "nowhere in the record is there any proof that Claimant is incapable of performing any of the jobs identified by Drs. Borgeson and Caston." Id. at 6. Relator's argument is premised upon a misreading of the commission's order.
 {¶ 36} Again, the commission relied exclusively upon Dr. Swanson's report. It did not rely upon the reports of Drs. Bacevich and Wunder. Clearly, Dr. Swanson's report is "proof" that claimant is incapable of performing the positions identified in the vocational reports.
 {¶ 37} In its brief, relator's second argument is captioned as follows:
The Industrial Commission abused its discretion in granting the application for permanent total disability benefits by awarding benefits based upon non-allowed conditions.
(Relator brief at 6; emphasis omitted.)
 {¶ 38} Under this captioned argument, relator again posits that claimant worked at Argosy Casino and was unable to continue his job there due to nonallowed conditions. This argument improperly invites this court to find that Dr. Swanson's report lacks credibility based upon relator's view of the Argosy Casino experience. Again, this court does not reweigh the evidence in mandamus.
 {¶ 39} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.