[Cite as *State ex rel. Mazany v. Mentor*, 2025-Ohio-1380.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Mathew Mazany, | : | |
| Relator, | : | |
| | : | No. 22AP-15 |
| v. | : | (REGULAR CALENDAR) |
| City of Mentor et al., | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on April 17, 2025

**On brief:** *Dworken & Bernstein Co., L.P.A.*, and *Kristen M. Kraus*, for relator. **Argued:** *Kristen M. Kraus.*

**On brief:** *Dave Yost,* Attorney General, and *Andrew J. Alatis,* for respondents Ohio Bureau of Workers' Compensation and Industrial Commission of Ohio. **Argued:** *Andrew J. Alatis.*

IN MANDAMUS

MENTEL, J.

{¶ 1} After the death of his father, relator, Mathew Mazany, filed an application under R.C. 4123.59 for death benefits as his father's dependent. Respondent, the Industrial Commission of Ohio ("commission"), upheld a Staff Hearing Officer's ("SHO") denial of the application. Mr. Mazany filed this action in mandamus seeking a writ ordering the commission to vacate the denial and grant the requested benefits. Respondent, Bureau of Workers' Compensation ("BWC"), filed a motion to be dismissed as party from this action.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate. The magistrate concluded that the commission

did not abuse its discretion because there was some evidence to support the finding that Mr. Mazany did not meet any of the statutory grounds to qualify as a presumptive beneficiary of death benefits under R.C. 4123.59(D), and therefore recommends that we deny his request for a writ. The magistrate also recommends granting BWC's motion to dismiss because no allegations in the complaint challenge an act of that agency, only the commission's order.

**{¶ 3}** Mr. Mazany has filed objections to the magistrate's decision. "In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). After reviewing Mr. Mazany's objections, we conclude that the magistrate properly determined the factual issues but erred, as did the commission, by only partially applying the applicable law.

**{¶ 4}** "To be entitled to the extraordinary remedy of mandamus, a relator must establish a clear legal right to the relief requested, a clear legal duty on the part of the bureau to provide the relief, and the lack of an adequate remedy in the ordinary course of the law." *State ex rel. Aaron's, Inc. v. Ohio Bur. of Workers' Comp.*, 148 Ohio St.3d 34, 2016-Ohio-5011, ¶ 18, citing *State ex rel. GMC v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, ¶ 9. Mr. Mazany has no adequate remedy in the course of law because there is no statutory right to appeal from a denial of death benefits under R.C. 4123.59. *State ex rel. Liposchak v. Indus. Comm.*, 90 Ohio St.3d 276, 281 (2000) (holding that "although death benefits may be granted or denied based on dependent status as defined in R.C. 4123.59, the denial or grant of such benefits is not appealable unless it concerns the causal connection between injury, disease, or death and employment," as required to appeal under R.C. 4123.512).

**{¶ 5}** Mr. Mazany has not objected to the magistrate's findings of fact, which we adopt in full. As stated therein, Mr. Mazany's father died on June 24, 2018, at which time Mr. Mazany was 20 years old. He subsequently applied for death benefits under R.C. 4123.59.

**{¶ 6}** "R.C. 4123.59 governs the commission's determination of a claimant's entitlement to death benefits." *State ex rel. Adams v. Indus. Comm. of Ohio*, 10th Dist. No. 21AP-587, 2023-Ohio-128, ¶ 22. The SHO considered Mr. Mazany's application under the standard set forth in R.C. 4123.59(D), which states:

> The following persons are presumed to be wholly dependent for their support upon a deceased employee:
>
> * * *
>
> (2) A child under the age of eighteen years, or twenty-five years if pursuing a full-time educational program while enrolled in an accredited educational institution and program, or over said age if physically or mentally incapacitated from earning, upon only the one parent who is contributing more than one-half of the support for such child and with whom the child is living at the time of the death of such parent, or for whose maintenance such parent was legally liable at the time of the parent's death.

{¶ 7} The magistrate read R.C. 4123.59(D)(2), the prong relevant to Mr. Mazany's application, to state that:

> [T]here are two exceptions for adult children to be presumed to be wholly dependent for their support upon a deceased employee. The first exception requires all three of the following criteria to be met: (1) the adult child must be physically or mentally incapacitated from earning; (2) the deceased parent must be contributing more than one-half of the support for such child; and (3) the adult child must be living with the deceased parent at the time of the parent's death.
>
> The second exception requires both of the following criteria to be met: (1) the adult child must have been physically or mentally incapacitated from earning; and (2) the deceased parent must have been legally liable for the maintenance of the adult child at the time of the parent's death.

(Oct 30, 2023 Appended Mag.'s Decision at 18.)

{¶ 8} We decline to adopt the magistrate's reference to the statutory conditions for establishing presumptive dependency as "exceptions." An exception is "[s]omething that is excluded from a rule's operation * * *." *Black's Law Dictionary* 706 (12th Ed.2024). Here, the statute defines different grounds for establishing presumptive dependency, but states no exclusion to the rule that might be termed an exception. Otherwise, the magistrate effectively reduces the unwieldy language of the statute to explain the conditions necessary to establish presumptive dependency.

{¶ 9} According to the commission and the magistrate, Mr. Mazany failed to establish any of those conditions. Mr. Mazany's first three objections, to which we now turn, claim otherwise.

> [1.] THE MAGISTRATE ERRED IN CONCLUDING THAT [CLAIMANT] WAS NOT PHYSICALLY OR MENTALLY INCAPACITATED FROM EARNING.

{¶ 10} Mr. Mazany argues that it was an abuse of discretion for the commission to not rely on any of the expert reports in the record to conclude that he was not physically or mentally incapacitated from earning under R.C. 4123.59(D)(2), and to instead "only" rely on "the fact that [he] had graduated high school, had a driver's license and had the ability to communicate with others." (Nov. 13, 2023 Objs. at 9.) As support for the contention that the commission's failure "to make any mention whatsoever of the only expert opinions before it" amounted to an abuse of discretion, he cites to this court's decision in *State ex rel. Donohoe v. Indus. Comm. of Ohio*, 10th Dist. No. 08AP-201, 2010-Ohio-1317. *Id.* at 8.

{¶ 11} Under the controlling standard of review, we are precluded from recognizing error in the choice of evidence relied upon by the commission to conclude that Mr. Mazany did not prove that he was physically or mentally incapacitated from earning. " 'Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion.' " *State ex rel. Kidd v. Indus. Comm.*, 173 Ohio St.3d 298, 2023-Ohio-2975, ¶ 17, quoting *State ex rel. Mobley v. Indus. Comm. of Ohio*, 78 Ohio St.3d 579, 584 (1997). In spite of the existence of two expert reports in the record prepared by psychologists, one of whom was the BWC's expert, and both of which opined that Mr. Mazany was unable to engage in sustained remunerative employment after diagnosing him with an array of mental health conditions, the SHO choose not to rely upon the reports. Instead, as grounds for his determination, the SHO stated that Mr. Mazany "is a high school graduate, has a car/driver's license, is able bodied and has the ability to communicate aptly with others." (S.R. at 620.) Even though probative evidence of Mr. Mazany's mental capacity generated by experts in the field was available for the SHO to rely upon, he chose instead to rely on the cited evidence. An inference of intentional disregard arises from this choice, but that choice was only the SHO's to make.

{¶ 12} Furthermore, *Donohoe* does not demonstrate that the commission abused its discretion. In that case, a claimant attempted to prove that an employer's violations of specific safety requirements ("VSSR") resulted in her husband's death. *Donohoe* at ¶ 1. The claimant rebutted the presumption that the commission had considered all the evidence before it by pointing to language in an order suggesting that the SHO erroneously believed that the claimant could not prove her claim without eyewitness testimony. *Id.* at ¶ 24-25. We inferred that "the commission did not consider the reports at all in the absence of supporting eyewitness testimony," and granted the claimant's writ seeking reconsideration before the commission. *Id.* at ¶ 24. On appeal, the Supreme Court of Ohio agreed: "An order that can engender two viable, yet irreconcilable, interpretations is too ambiguous to withstand scrutiny, and one that is potentially based on an erroneous belief that a VSSR cannot be proved in the absence of eyewitnesses is clearly an abuse of discretion." *State ex rel. Donohoe v. Indus. Comm.*, 130 Ohio St.3d 390, 2011-Ohio-5798, ¶ 19.

{¶ 13} Unlike in *Donohoe*, Mr. Mazany cannot rebut the presumption that the SHO considered and rejected the expert reports. *See State ex rel. Lovell v. Indus. Comm. of Ohio*, 74 Ohio St.3d 250, 252 (1996) (holding that "because the commission does not have to list the evidence considered, the presumption of regularity that attaches to commission proceedings * * * gives rise to a second presumption--that the commission indeed considered all the evidence before it"). (Citation omitted.) Here, the order was not ambiguous, nor did it base its conclusion on an erroneous premise. Accordingly, the first objection is overruled.[1]

> [2.] THE MAGISTRATE ERRED IN CONCLUDING THAT [CLAIMANT] WAS NOT WHOLLY, PARTLY OR PROSPECTIVELY DEPENDENT UPON DECEDENT AT THE TIME OF HIS DEATH.

{¶ 14} Mr. Mazany's objection concerns the magistrate's conclusion that some evidence supported the commission's conclusion that he did not show that his father was

---

[1] Mr. Mazany also argues that "counsel for the BWC made **no** arguments with respect to [his] mental incapacitation and inability to engage in sustained remunerative employment." (Emphasis sic.) (Objs. at 11.) We fail to see the relevance of this omission, as "the burden of proof is, and always has been, on the claimant to submit evidence entitling them to benefits." *State ex rel. Estate of Sziraki v. Admr., Bur. of Workers' Comp.*, 10th Dist. No. 10AP-267, 2011-Ohio-1486, ¶ 11. Moreover, BWC's counsel did, in closing arguments, mention being "physically or mentally incapacitated from earning" as one of the "factors" under R.C. 4123.59 to establish dependency. (S.R. at 592.)

"contributing more than one-half of the support for" him, or that he was living with him at the time of his father's death. R.C. 4123.59(D). He cites "200 pages of records detailing financial support" as "overwhelming evidence" that his father contributed more than one half of his support. (Objs. at 11-12.) Mr. Mazany claims that "the SHO provided **no** explanation or justification as to how he reached [the] conclusion" that the evidence did not establish that his father was contributing the required amount of support, and criticizes the magistrate's reasoning, pointing to an affidavit filed by his mother attesting to the amount of support. (Emphasis sic.) *Id.* at 12.

{¶ 15} The SHO did not fail to provide any explanation for concluding that Mr. Mazany's father did not provide more than one half of his support. The SHO acknowledged that Mr. Mazany's father had "paid some living expenses for his adult son, including monies for food, entertainment, car insurance, cell phone, medical insurance, and medical bills." (S.R. at 619.) Nevertheless, the SHO concluded that "it has not been established that the decedent was contributing more than one half of the support for his son" when he died. *Id.* at 620. The SHO decided what weight to give the evidence, including the records and affidavit Mr. Mazany describes.

{¶ 16} Mr. Mazany also mentions the magistrate's conclusion that there was some evidence to support the finding that he was living with his mother at the time of his father's death, contrary to the requirement of R.C. 4123.59(D). However, he does not explain how this finding was not based on some evidence. (*See* Objs. at 13.) As the magistrate noted, Mr. Mazany himself testified that he lived with his mother. The second objection is overruled.

> [3.] THE MAGISTRATE ERRED IN CONCLUDING THAT THERE WAS NO EVIDENCE THAT DECEDENT WAS LEGALLY LIABLE FOR THE MAINTENANCE OF THE [CLAIMANT] AT THE TIME OF [THE DECEDENT'S] DEATH.

{¶ 17} In the third objection, Mr. Mazany criticizes the SHO for concluding that his father "was not legally liable for [his] support" because his parents' dissolution agreement failed to provide any such support. *Id.* at 15. He claims that "[n]either the SHO nor the Magistrate engaged in any meaningful discussion" of his argument that under *Castle v. Castle*, 15 Ohio St.3d 279 (1984), his father was legally liable for his support. *Id.*

{¶ 18} In *Castle*, the Supreme Court of Ohio recognized an "exception to [the] general rule" that "the duty of the parent to support a child ends when the child reaches the age of majority." *Id.* at 282. As expressed in its syllabus law, the court held: "The common-law duty imposed on parents to support their minor children may be found by a court of domestic relations having jurisdiction of the matter, to continue beyond the age of majority if the children are unable to support themselves because of mental or physical disabilities which existed before attaining the age of majority." *Id.*, paragraph one of the syllabus. Mr. Mazany argues that "given the fact that [he] could not support himself because of his mental disabilities," the absence of any actual order from the domestic relations court concerning support for him is immaterial. (Objs. at 15-16.) However, we consider the absence of such an order fatal to this argument. The holding of *Castle* only allows a domestic relations court to make such a finding, which no court made in Mr. Mazany's case. *Castle* does not actually support Mr. Mazany's position because, without such an order recognizing that an adult child has a mental or physical disability, the common-law duty of support applicable to minors does not extend to that child. There was no evidence put before the commission that Mr. Mazany's parents attempted to obtain such an order from the domestic relations court, and, in fact, "[t]he dissolution documents make clear that decedent had no obligation to support claimant after the age of 18." (Appended Mag.'s Decision at 22.) The third objection is overruled.

> [4.] THE MAGISTRATE ERRED IN FAILING TO ANALYZE
> THIS CLAIM UNDER THE MANDATE OF [R.C.] 4123.59(D)
> EVEN WHERE DEPENDENCY IS NOT PRESUMED.

{¶ 19} In his final objection, Mr. Mazany argues that the commission abused its discretion by failing to consider whether he qualified for death benefits under the final paragraph of R.C. 4123.59(D) after determining that he did not qualify as a presumptive beneficiary.

{¶ 20} The final paragraph of R.C. 4123.59(D), which follows the requirements for demonstrating presumptive dependency and prospective dependency, states:

> In all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employee, but no person shall be considered as dependent unless such person is a member of the family of the

deceased employee, or bears to the deceased employee the relation of surviving spouse, lineal descendant, ancestor, or brother or sister.

{¶ 21} "The last paragraph of R.C. 4123.59(D) applies to claims for death benefits brought by persons who are not entitled to a presumption of dependency." *State ex rel. McDonald v. Indus. Comm.*, 172 Ohio St.3d 618, 2023-Ohio-1620, ¶ 9 (affirming grant of writ of mandamus because relator, as unmarried partner of decedent who did not qualify as a presumptive dependent, had a clear legal right to have the commission determine whether she qualified as a "member of the family" of the decedent under final paragraph of R.C. 4123.59(D)). Mr. Mazany was not entitled to the presumption of dependency, but that does not end the matter. "For persons who are not entitled to the presumption of dependency, the last paragraph of R.C. 4123.59(D) instructs that actual dependency, in whole or in part, must be determined according to the facts that existed at the time of the injury that resulted in the employee's death." *Id.* Here, the SHO's order only addressed whether Mr. Mazany qualified as a presumptive dependent, but failed to consider whether "the facts in each particular case existing at the time of the injury resulting in the death" of Mr. Mazany's father showed that he was actually dependent. R.C. 4123.59(D). The statutory requirement is phrased in mandatory language: "the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employee * * *." Once he did not qualify as a presumptive dependent, Mr. Mazany had a clear legal right to have the question of dependency determined in accordance with the facts of his case, and the commission had a clear legal duty to make that determination. "A writ of mandamus may lie when there is a legal basis to compel the commission to perform its clear legal duty under the law or when the commission has abused its discretion in carrying out its duties." *State ex rel. Cogan v. Indus. Comm.*, 174 Ohio St.3d 80, 2023-Ohio-3567, ¶ 13, citing *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, ¶ 9.

{¶ 22} For the foregoing reasons, the fourth objection is sustained, and we grant a limited writ remanding the matter to the commission with instructions to apply the last paragraph of R.C. 4123.59(D) to Mr. Mazany's application for death benefits. When doing so, the commission must not evaluate the "question of dependency" by applying the factors for determining presumptive dependency stated in the first paragraph of R.C. 4123.59(D),

which would be formalistic and redundant of its previous determination. Rather, the commission must make a determination "in accordance with the facts in [this] particular case," the record of which extends far beyond what the SHO relied upon. R.C. 4123.59(D).

{¶ 23} In conclusion, we adopt the findings of fact and conclusions of law of the magistrate with the variation described above. We grant BWC's motion to be dismissed from this action. We overrule Mr. Mazany's first three objections, sustain the fourth objection, and grant a limited writ of mandamus in accordance with this decision.

*Limited writ of mandamus granted;*
*objections sustained in part and overruled in part;*
*motion to dismiss as party granted.*

JAMISON, P.J. and BOGGS, J., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Mathew Mazany, | : | |
| Relator, | : | |
| v. | : | No.  22AP-15 |
| City of Mentor et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on October 30, 2023

*Dworken & Bernstein Co., L.P.A.*, and *Kristen M. Kraus*, for relator.

*Dave Yost,* Attorney General, and *Andrew J. Alatis*, for respondents Ohio Bureau of Workers' Compensation and Industrial Commission of Ohio.

IN MANDAMUS

{¶ 24} Relator, Mathew Mazany ("claimant") has filed this original action seeking a writ of mandamus against respondents, City of Mentor ("employer") and Industrial Commission of Ohio ("commission"), ordering the commission to vacate its order of July 23, 2021, and grant relator's application for death benefits.

Findings of Fact:

{¶ 25} 1. On June 24, 2018, claimant's father, Mathew Mazany ("decedent"), died during the course of his employment as a police officer with the employer.

{¶ 26} 2. Prior to decedent's death, decedent had been married to Lisa Mazany ("Lisa") from October 18, 2004, until the dissolution of their marriage on June 7, 2017, pursuant to a separation agreement and judgment entry of dissolution of marriage. Decedent and Lisa had one child, claimant, who was born in June 1998; thus, he was 20 years old at the time of decedent's death. Because claimant had reached the age of majority at the time of the dissolution, the agreement did not provide for child support. Lisa testified before the commission that, after the dissolution, decedent owned the marital residence, and she and claimant resided in it, paying monthly rent to decedent of $856. Pursuant to the terms of the dissolution, decedent paid Lisa $400 per month for 132 consecutive months. Lisa testified that claimant "primarily" resided with her, but claimant also had a bedroom in decedent's house, and claimant would spend the night there every other weekend when decedent was not working. Claimant testified before the commission that he would go see his father at his house 15 to 20 times per month. From the testimony and documentation presented to the commission, decedent spent $2,917.12, or $277.82 per month, on claimant in the 10 and one-half-month period between the parties' dissolution and decedent's death. Pursuant to documentation claimant presented to the commission at the staff hearing officer ("SHO") hearing, claimant alleged that decedent paid a total of $984.82 monthly toward claimant's support, which included additional amounts for claimant's health insurance, car insurance, cell phone bills, and money deposits to claimant's savings account.

{¶ 27} 3. Claimant submitted a hypothetical child-support order to the commission, detailing what decedent would have paid for child support had claimant been subject to such an order. The hypothetical child-support order indicated that decedent would have been required to pay $768.83 per month.

{¶ 28} 4. Claimant presented to the commission his academic records from kindergarten through high school, which indicated the following: (1) claimant graduated from high school in 2016; (2) claimant had an Individualized Educational Plan ("IEP") in place in 12th grade; (3) a 12-grade summary of performance evaluation indicates that claimant is intelligent and creative, displays difficulty with his social/pragmatic language, lacks follow through with his organizational skills, passed his Ohio Graduation Tests ("OGTs") with great success while earning advanced and accelerated scores, and plans to

attend a four-year college; claimant and Lisa signed the summary of performance document and stated they did not believe claimant needed accommodations through adult agencies at that time, claimant did not require a student service plan, and positive feedback was all that was required to achieve his goals after high school; (4) claimant's 12-grade IEP indicated that claimant planned to attend Lakeland Community College and become a history professor; he excels in writing; he has a driver's license; he travels independently; he plans to obtain part-time employment while in college; he enjoys computer time; his grades have been negatively impacted by missing assignments and homework; he generally performs well on tests and classwork; he has the academic scores to complete classwork, as demonstrated by higher test scores, but does not complete the smaller tasks; he chooses not to complete his work, which is not a function of poor pragmatic language or social skills but rather a behavior he is choosing to engage in; he scored average in all academic areas on a 2013 achievement test; he scored accelerated on three of the state graduation tests, advanced on one, and proficient on one; he struggles with social skills and appropriate behavior; he is failing many of his classes due to missing or incomplete assignments, not poor comprehension; he is noted by his teachers to be very intelligent; he is humorous, smart, polite, funny, and a pleasure; and he struggles with social/pragmatic language; and (5) Evaluation Team Reports completed when claimant was in 12th grade indicated that he has low grades due to missing assignments, cell phone distractions are a major problem, he does not demonstrate difficulty with cognitive processing or academic skills, he has difficulty completing assignments due to behavior he chooses to engage in, and he has no mental health or medical diagnoses impacting his functioning.

{¶ 29} 5. Claimant presented his academic records from Lakeland Community College, which indicated claimant enrolled at the college in 2016 and received financial aid. However, claimant never attended classes, despite telling his parents that he was attending daily classes.

{¶ 30} 6. Claimant also applied for a job with UPS and was subsequently hired, although he never received any assignments. He eventually returned his uniform.

{¶ 31} 7. On September 29, 2018, Denise Eslinger, LPCC-S, NCSP, ASD, CBT, BCPC, LSW, issued a report, which provided the following: (1) the results of testing

indicate a strong possibility that claimant meets the DSM-5 criteria for Autism Spectrum Disorder, Depression, Anxiety, and ADHD; (2) the behavioral deficits occur in the home, at school, and in general social settings; (3) the results suggest many social, emotional levels, and general behaviors to be atypical.

{¶ 32} 8. On June 19, 2019, Robert Kaplan, Ph.D., issued a report, in which he indicated the following: (1) claimant has psychological symptoms that match the criteria for autism spectrum disorder (Level 1), attention deficit hyperactivity disorder, and adjustment disorder with mixed anxiety and depressed mood (due to psychosocial stressors involving the death of his father and rejection by peers, in addition to academic failure when he attempted to go to a community college and the inability to maintain employment);  claimant became suicidal due to academic, vocational, and social deficits and related setbacks, and pointed a gun at his head one or two times in 2017; (2) he reported that he had an alter ego and heard voices, in addition to being anxious and depressed; (3) claimant experiences almost daily panic attacks; (4) as a result of his diagnoses, he is unable to engage in sustained remunerative employment or vocational rehabilitation or other interventions due to functional impairment, citing the psychological symptoms outlined by Eslinger, the evaluation team reports, the IEP report, his Lakeland Community College transcript; his psychological testing, his mental-status examination; and his history of psychological symptoms; (5) despite years of intervention in a structured school setting, he has not been able to reach a level of adaptation that would allow him to engage in competitive sustained remunerative employment; and (6) he is permanently and totally disabled by the listed mental disorders.

{¶ 33} 9. In a June 7, 2019, affidavit, Lisa averred the following: (1) although claimant was 19 years old at the time the marriage ended, he did not work and has never had a job; (2) during the time of marriage, decedent supported claimant and Lisa; (3) subsequent to the dissolution, decedent continued to support claimant financially; (4) although claimant resided with Lisa following the dissolution, decedent was the owner of the house; (5) Lisa paid decedent pursuant to a lease agreement so she and claimant could continue to reside in the house; (6) decedent provided additional financial support for claimant, including health insurance, paying for his cell phone, paying for his car

insurance, paying for all car repairs, paying for his clothing, paying for his entertainment, paying for his doctor bills, and regularly paying for groceries; (6) claimant would stay with decedent every other weekend; and (7) at the time of decedent's death, decedent was providing more than half of the support for claimant.

{¶ 34} 10. On June 19, 2019, claimant filed an application for death benefits pursuant to R.C. 4123.59. Claimant's application for death benefits explicitly indicated that claimant was not residing with decedent at the time of his death, and indicated he only resided with decedent part-time.

{¶ 35} 11. At the request of the Bureau of Workers' Compensation ("BWC"), Glennda Stelnicki, Ph.D., examined claimant. In a November 23, 2019, report, Dr. Stelnicki indicated the following: (1) claimant has never been gainfully employed; (2) he meets the criteria for major depression, moderate, recurrent; and attention deficit hyperactive disorder, primarily inattentive; rule out autism spectrum disorder; (3) many of his autistic symptoms can be explained more by behavioral issues, both those learned an unlearned, due to the poor parenting by his parents and social isolation; (4) his cognitive issues are severe; the depression, sensory-processing disorder, and ADD are moderate; his social issues are moderate to severe; claimant is unable to engage in remunerative employment; claimant is incapable of working with reasonable accommodations; his condition is not permanent; he is bright and articulate, and he can make progress given treatment and the time needed; his condition will improve with treatment; and while improvement with medication is expected, he is not employable at this time and it cannot be predicted when he may be so.

{¶ 36} 12. On December 12, 2019, the BWC issued an order denying claimant's application for death benefits. Claimant appealed.

{¶ 37} 13. On February 7, 2020, a hearing was held before a district hearing officer ("DHO"). In a February 19, 2020, order, the DHO found the following: (1) claimant was not wholly dependent upon the decedent at the time of death; thus, the application of death benefits is denied; (2) the proof is insufficient; (3) the dissolution documents reflect that claimant is emancipated and not under any disability; (4) claimant visited with decedent and periodically stayed overnight at decedent's residence; (5) decedent paid for some of claimant's living expenses, including some food, entertainment, car insurance,

cell phone, medical insurance, and medical bills not covered by insurance; (6) as of the date of decedent's death, he did not have a legal obligation to support claimant; (7) claimant had emotional and learning issues in school and at home; however, there was no diagnosis or opinion as to the extent of disability at the time of death; (8) there is no contemporaneous psychological conclusion at the time of death that the adult son was not able to have earnings; (9) after decedent's death, claimant underwent psychological examinations that identified multiple psychological diagnoses, and there is no evidence claimant cannot work; (10) in the alternative, if one could conclude claimant was incapable of having earnings when decedent died, the evidence at the time of decedent's death reflects that claimant was living with his mother, so there is no presumption of dependency under R.C. 4123.59; and (11) the financial information is not sufficient and specific enough to conclude the amount of support decedent provided was more than half and no conclusion can be reached as to the percentage of financial support provided. Claimant appealed.

{¶ 38} 14. On March 13, 2019, Dr. Kaplan issued a rebuttal report, in which he found the following: (1) Dr. Stelnicki's psychological testing did not indicate that claimant was overreporting or exaggerating his psychological symptoms or cognitive impairment; (2) Dr. Stelnicki's examination indicates that claimant had mental disorders, which totally disabled him, before his father died; (3) there is no known treatment for the severe cognitive impairment Dr. Stelnicki found, particularly given that claimant has been in IEPs since early childhood and is still unable to work, and given that she found extraordinary differences between the functioning of his left and right hemispheres; such findings indicated an underlying biological cause, not a functional one, which makes it more likely that it will be permanent; (4) in contrast to Dr. Stelnicki's finding that disabling psychopathology was not permanent, she still concluded that, even with reasonable accommodations, claimant is not able to work, and it cannot be predicted when he would become employable even with treatment; (5) the combination of claimant's symptoms, due to any condition, is still disabling; (6) the DHO was not informed that the diagnoses of autism spectrum disorder, ADHD, and social (pragmatic) communication disorder are classified as neurodevelopmental disorders that develop early in development in the DSM-5; (7) the chronic nature of these diagnoses would

indicate that they would have had to exist at the time that decedent died; (8) given his treatments throughout childhood, they could have only gotten better over time, not worse, but, yet, even with treatment, he remained unable to work; (9) it can be reasonably inferred that, even though he had no formal psychological evaluation that indicated his extent of disability at the time of his father's death, he must have still been disabled by these conditions, particularly given that he remains disabled by conditions that are known to develop in childhood and manifested severe and disabling deficits before his father died, requiring special accommodations and IEP services; and (10) it is inconceivable that claimant could have been able to engage in competitive sustained remunerative employment at the time decedent died.

{¶ 39} 15. On July 9, 2021, a hearing was held before an SHO, and in a July 21, 2021, order, the SHO found the following: (1) claimant's application for death benefits is denied; (2) the dissolution documents indicate that claimant was emancipated and not under any disability; (3) claimant lived with his mother after the dissolution; (4) claimant periodically stayed overnight at decedent's house; (5) decedent paid some living expenses for his adult son, including monies for food, entertainment, car insurance, cell phone, medical insurance, and medical bills; (6) claimant and Lisa signed a summary of performance document from his high school that stated they did not believe claimant needed accommodations through adult agencies at that time, did not require a student service plan, and believed positive feedback was all that was required to achieve his goals after high school; (7) claimant only applied for one job in his life, with UPS, and was hired but was never given any assignments; (8) as of the date of decedent's death, decedent did not have a legal obligation to support claimant, as evidenced by the dissolution documents; (9) it has not been established that decedent was contributing more than one half of the support for claimant at the time of his death; (10) it was not established that claimant was mentally or physically incapacitated from having any earnings at the time of decedent's death; (11) claimant is a high school graduate, has a car, has a driver's license, is able bodied, and has the ability to communicate aptly with others; and (12) claimant has failed to establish that he was wholly, partly, or prospectively dependent upon decedent at the time of his death.

{¶ 40} 16. Claimant appealed, but the commission denied the appeal on August 9, 2021. On August 27, 2021, claimant filed a request for reconsideration, which the commission denied on September 2, 2021.

{¶ 41} 17. On January 5, 2022, claimant filed a complaint for writ of mandamus.

Conclusions of Law and Discussion:

{¶ 42} The magistrate recommends that this court deny claimant's request for writ of mandamus.

{¶ 43} The Supreme Court of Ohio has set forth three requirements that must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 44} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 78-79 (1986). But when the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56, 58 (1987).

> R.C. 4123.59 provides, in pertinent part, the following:
>
> (D) The following persons are presumed to be wholly dependent for their support upon a deceased employee:
>
> * * *
>
> (2) A child under the age of eighteen years, or twenty-five years if pursuing a full-time educational program while enrolled in an accredited educational institution and program, or over said age if physically or mentally incapacitated from earning, upon only the one parent who is contributing more than one-half of the support for such child and with whom the child is living at the time of the death of such parent, or for whose maintenance such parent was legally liable at the time of the parent's death.

{¶ 45} Therefore, there are two exceptions for adult children to be presumed to be wholly dependent for their support upon a deceased employee. The first exception requires all three of the following criteria to be met: (1) the adult child must be physically or mentally incapacitated from earning; (2) the deceased parent must be contributing more than one-half of the support for such child; and (3) the adult child must be living with the deceased parent at the time of the parent's death.

{¶ 46} The second exception requires both of the following criteria to be met: (1) the adult child must be physically or mentally incapacitated from earning; and (2) the deceased parent must have been legally liable for the maintenance of the adult child at the time of the parent's death.

{¶ 47} In the present case, claimant first argues that the commission abused its discretion because its decision to deny him death benefits was not supported by some evidence, presenting two arguments. Claimant first asserts that the commission abused its discretion when it incorrectly concluded he was not physically or mentally incapable of having earnings, which relates to the first criterion for both the first and second exceptions in R.C. 4123.59(D)(2). Claimant points to Drs. Stelnicki's and Kaplan's reports, in which both doctors conclude that, as a result of claimant's psychological conditions, he was unable to engage in sustained remunerative employment. Claimant contends the commission rejected this medical evidence in contravention of the requirements in *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649 (1994); *State ex rel. Pavis v. Gen. Motors Corp., B.O.C. Group*, 65 Ohio St.3d 30, 33 (1992); and *State ex rel. Hutton v. Indus. Comm.*, 29 Ohio St.2d 9 (1972), which he claims prohibit the commission from arbitrarily rejecting competent medical proof without citing some reasonable basis for the rejection.

{¶ 48} With regard to the first exception, the first criterion requires that the adult child must be physically or mentally incapacitated from earning. On this issue, the SHO found that a summary of performance document from claimant's high school indicated that claimant and his mother believed claimant did not need accommodations through adult agencies at that time, did not require a student service plan, and positive feedback was all that was required to achieve claimant's goals after high school; the only job claimant applied for in his life, with UPS, he was hired; it was not established that

claimant was mentally or physically incapacitated from having any earnings at the time of decedent's death; and claimant is a high school graduate, has a car, has a driver's license, is able bodied, and has the ability to communicate aptly with others.

{¶ 49} Although claimant presents his argument as one urging that the commission's decision was not supported by some evidence, what claimant is actually seeking is a determination that his evidence was more convincing than the commission's evidence. However, this court cannot reweigh the evidence in a mandamus action, and the magistrate finds that the SHO's cited findings clearly constituted some evidence. *See State ex rel. Cincinnati, Inc. v. Lowe*, 10th Dist. No. 04AP-241, 2005-Ohio-516, ¶ 6 (even if there is conflicting evidence before the commission, this court does not reweigh the evidence in mandamus); *State ex rel. Pritt v. Indus. Comm.*, 10th Dist. No. 17AP-98, 2018-Ohio-1066, ¶ 13 (as long as some evidence supports the commission's findings, those findings will not be disturbed). The summary of performance report cited by the SHO indicated that claimant had passed his OGT's with great success, earning advanced and accelerated scores; neither he nor his mother believed he needed services, supports, programs, or accommodations through adult agencies; neither claimant nor his mother believed he required a student service plan; and both claimant and his mother believed positive feedback was all that was required to achieve his goals after high school. Furthermore, the Evaluation Team Report from his high school submitted as evidence by claimant indicated that claimant did not have any mental health or medical diagnoses impacting his functioning, his cognitive functioning is in the average range, his academic skills are in the average range; his struggles in classes are due to missing assignments and not academic skill deficit; and he has the academic skills to complete the work but does not put forth the effort. In addition, the SHO cited the following facts of the case as supporting the conclusion that claimant was not mentally or physically incapacitated from having any earnings: claimant is a high school graduate, has a car, has a driver's license, is able bodied, and has the ability to communicate aptly with others. The SHO also noted that the dissolution documents indicate that claimant was not under any disability. This evidence constituted some evidence to support the commission's decision that claimant was not physically or mentally incapacitated from earning at the time of decedent's death.

{¶ 50} The magistrate rejects claimant's argument that *Eberhardt, Pavis,* and *Hutton*, stand for the proposition that the commission may not arbitrarily reject competent medical proof without citing some reasonable basis for the rejection. In *State ex rel. Deal v. Cunningham*, 10th Dist. No. 10AP-142, 2010-Ohio-6175, ¶ 9-10, this court addressed *Eberhardt*, *Pavis,* and *Hutton* and succinctly summarized the law concerning the commission's rejection of medical reports:

> The commission has the exclusive authority to evaluate the weight and credibility of the evidence. *State ex rel. Burley v. Coil Packing, Inc.* (1987), 31 Ohio St.3d 18, 20-21, 31 Ohio B. 70, 508 N.E.2d 936. The commission is not required to note the evidence it finds unpersuasive or the reason for rejecting it, because "[l]ogic dictates that if the identity of rejected evidence is irrelevant, so is the reason for the rejection." *State ex rel. Bell v. Indus. Comm.* (1995), 72 Ohio St.3d 575, 578, 1995 Ohio 121, 651 N.E.2d 989. Accordingly, the commission does not need to state why it found one doctor's report more persuasive than that of another doctor. *Id.* at 577.
>
> When, however, the commission states a reason for rejecting a report, it may not do so arbitrarily. *State ex rel. Hutton v. Indus. Comm.* (1972), 29 Ohio St. 2d 9, 13-14, 278 N.E.2d 34. To avoid rejecting medical proof arbitrarily, the commission must have, "some reasonable basis for the * * * rejection of a physician's finding." *State ex rel. Eberhardt v. Flxible Corp.* (1994), 70 Ohio St.3d 649, 655, 640 N.E.2d 815; see also *State ex rel. Pavis v. Gen. Motors Corp.*, 65 Ohio St.3d 30, 33, 1992 Ohio 114, 599 N.E.2d 272.

{¶ 51} In the present case, the commission did not state any reason for rejecting Drs. Stelnicki's and Kaplan's reports; thus, the SHO was not required to explain why it was rejecting the reports. *See Hutton.* Nonetheless, it is noteworthy that these reports relied upon by claimant were created after decedent's death based upon claimant's evaluations that occurred after decedent's death, while the speech and language pathologist summary of performance report from claimant's high school, as well as the other evaluations from claimant's high school, were based upon evaluations undertaken prior to decedent's death. The commission weighed the conflicting evidence and found the evaluations performed prior to decedent's death were more probative of claimant's functioning, disabilities, and mental capacity for earning. Therefore, because there was some evidence to support the commission's finding that claimant was not physically or

mentally incapacitated from earning, claimant could not meet the first criterion for the first and second exceptions in R.C. 4123.59(D)(2). As all three criteria for the first exception and both criteria for the second exception must be met to qualify under each exception, claimant cannot qualify under either the exception. Claimant's first argument is without merit.

{¶ 52} Notwithstanding claimant's failure to demonstrate any abuse of discretion with regard to the first criterion for the first and second exceptions in R.C. 4123.59(D)(2), the magistrate will briefly address claimant's second argument. Claimant first asserts that the SHO abused his discretion with regard to the second and third criteria for the first exception. In this argument, claimant asserts that the commission abused its discretion when it concluded that he was not wholly, partly, or prospectively dependent on decedent at the time of his death. Claimant contends he lived with decedent and Lisa his entire life until about 11 months before decedent's death, when his parents got a dissolution; he only primarily resided with Lisa because decedent worked third shift; he provided uncontroverted testimony that he had his own bedroom at decedent's house, would stay there every other weekend, and spent approximately 15 to 20 days there every month; decedent was contributing more than one-half of his support; decedent earned more than twice what Lisa did the year of the dissolution; after the dissolution, claimant continued to provide the majority of his financial support by paying for claimant's health insurance, cellphone, car insurance, car repairs, clothing, entertainment, doctor bills, and groceries; the commission ignored the nearly 150 pages of W-2s, text messages, bank records, calendars, health insurance expenses, car insurance expenses, and cell phone expenses, which showed decedent provided claimant average monthly support of $984.82; and the commission produced no contrary evidence contesting the amount decedent provided in support of claimant.

{¶ 53} However, the SHO cited some evidence to support his findings that, as of decedent's death, claimant was not living with decedent, and decedent was not contributing more than one-half of the support for such child. With regard to where claimant resided, the SHO found the dissolution documents indicate that claimant was emancipated, claimant lived with his mother after the dissolution, and claimant only periodically stayed overnight at decedent's house. The record supports these conclusions.

Claimant testified that he primarily resided with his mother; his June 7, 2019, application for death benefits with the BWC indicated that he was not residing with decedent at the time of his death and only lived with him part-time; and the decree of dissolution indicated that claimant was emancipated. Despite claimant's contention that he only primarily lived with his mother because decedent worked third shift, this reasoning does not change the fact that he primarily lived with his mother. Therefore, although claimant presented evidence that he spent time with his father at his house and maintained a room at his residence, where he slept every other weekend, there was clearly some evidence to support the SHO's determination that claimant was not living with decedent at the time of his death.

{¶ 54} As for the amount of monies decedent contributed for the support of claimant, the SHO found that decedent paid some living expenses for his adult son, including monies for food, entertainment, car insurance, cell phone, medical insurance, and medical bills, but it was not established that decedent was contributing more than one-half of the support for claimant at the time of his death. The magistrate acknowledges that claimant presented substantial documentation and evidence surrounding decedent's financial contributions for his support. However, despite the quantity of evidence, there was no evidence that decedent's expenditures amounted to more than half of claimant's support, and there was not clear evidence of the specific amounts decedent and claimant's mother each spent in total to support claimant for comparative purposes. Therefore, even if claimant had met the first criterion for the first exception in R.C. 4123.59(D)(2), there was some evidence to support the SHO's determinations with regard to the second and third criteria, and there was no abuse of discretion.

{¶ 55} Furthermore, even if claimant had met the first criterion for the second exception in R.C. 4123.59(D)(2), the SHO did not commit an abuse of discretion in addressing the second criterion. There was no evidence that decedent was legally liable for the maintenance of claimant at the time of death. The dissolution documents make clear that decedent had no obligation to support claimant after the age of 18. Claimant asserts decedent was legally liable for claimant's maintenance at the time of his death, pointing to *Castle v. Castle*, 15 Ohio St.3d 279 (1984), in which the court held that domestic relations courts have jurisdiction to continue child support past the age of

majority for children who are unable to support themselves due to mental or physical disabilities that existed before attaining the age of majority. Claimant points out that the SHO only briefly mentioned that he periodically stayed with decedent and that decedent had paid some of his living expenses. However, even if the domestic-relations law guiding *Castle* could be applied to workers' compensation law, *Castle* would not aid claimant in the present circumstances. There was no order from a domestic relations court continuing child support for claimant. Although claimant claims decedent paid support to either Lisa or claimant directly for the benefit of claimant based upon a "unique relationship," such clearly does not comply with the language in R.C. 4123.59(D)(2). Any voluntary financial contributions decedent made for the support of claimant after he reached the age of majority cannot constitute a legal liability, as required by R.C. 4123.59(D)(2). Therefore, even if claimant had been able to demonstrate an abuse of discretion with regard to the first criterion for the first and second exceptions in R.C. 4123.59(D)(2), the SHO's determinations for the second and third criteria for the first exception and the second criterion for the second exception were supported by some evidence.

{¶ 56} For the foregoing reasons, there was some evidence to support the commission's decision that claimant failed to meet either exception in R.C. 4123.59(D)(2), and the commission did not abuse its discretion when it found so.

{¶ 57} Accordingly, it is the magistrate's recommendation that this court deny claimant's petition for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a

finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.