[Cite as *State ex rel. Holderman v. Indus. Comm.*, 2025-Ohio-4553.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Darrell W. Holderman c/o Patricia N. Holderman, Child, | : | |
| | : | |
| Relator, | : | No. 23AP-237 |
| | : | |
| v. | : | (REGULAR CALENDAR) |
| | : | |
| Industrial Commission of Ohio et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on September 30, 2025

**On brief:** *Hochman & Plunkett Co., L.P.A., Gary D. Plunkett, Shaun P. Omen,* and *Jenee N. Zweidinger,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Andrew J. Alatis,* for respondent Industrial Commission of Ohio.

**On brief:** *LL Patterson LLC,* and *Lisa L. Patterson,* for respondent Merchants Security Services of Dayton Ohio Inc.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

DINGUS, J.

{¶ 1}  Relator, Patricia N. Holderman ("Holderman"), seeks a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order regarding her request for dependency benefits arising from the death of her father, Darrell W. Holderman ("decedent").  This matter was referred to a magistrate pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals.  The magistrate issued findings of fact and conclusions of law, which we have appended to this decision.  The

magistrate recommended granting a limited writ and returning the matter to the commission for further proceedings. Holderman and the commission have both filed objections to the magistrate's decision. We overrule the objections on both sides and adopt the magistrate's recommendations.

## I. Facts and Procedural History

{¶ 2} As explained more thoroughly in the magistrate's decision below, the decedent was killed on June 1, 2022 while working as a security officer with Merchants Security Services of Dayton Ohio, Inc. Holderman filed an application for funeral expenses and death benefits. The application form identified Holderman as the sole party seeking death benefits based on her dependency on the decedent for support. During the application process, Holderman supplied information indicating the following: at the time of the decedent's death, Holderman and her two minor children lived at the decedent's home, with the decedent paying for the mortgage, utilities, cell phones, automobile insurance, and other household expenses. Holderman was 39 years old and had lived with the decedent for most of her life. Holderman worked at a school cafeteria and a friend's ice cream shop, but did not work from April 15, 2022 until the time of the decedent's death because she was recovering from back surgery. She resumed her position at the school cafeteria in August 2022.

{¶ 3} The Bureau of Workers' Compensation allowed Holderman's claim related to the decedent's funeral expenses, but denied her claim for dependent benefits because she was able to work and earn her own money. Holderman appealed the decision. At subsequent hearings she presented additional evidence regarding her back surgery, including the fact that it stemmed from chronic back conditions that impacted her ability to perform certain physical movements such as lifting objects over 15 pounds. She also testified that the decedent had specifically promised to financially support Holderman during her recovery. Holderman argued that she was entitled to a presumption of whole dependency under R.C. 4123.59 because her back surgery rendered her unable to work at the time of the decedent's death. Holderman urged the commission to limit its view of her incapacity to the time of decedent's death, and otherwise argued that the commission should consider her to be dependent because she financially relied on the decedent for years.

{¶ 4}   The commission ultimately determined that Holderman did not qualify as wholly or partly dependent on the decedent under R.C. 4123.59.  The commission noted that although Holderman was the decedent's child and living with the decedent at the time of his death, she did not establish that she was incapacitated from earning and that the decedent provided more than one half of her support, or that the decedent had been legally liable to support Holderman.  The commission went on to hold that Holderman qualified as a prospective dependent under the statute based on the decedent's promise to support her during her post-surgical recovery, as well as the shared living arrangement and the decedent's generosity.  The commission granted a lump sum award of $3000.

{¶ 5}   Holderman filed a complaint seeking a writ of mandamus, asking this court to vacate the commission's decision and enter judgment awarding benefits based on Holderman's status as a wholly or partly dependent person.  She argued that she was entitled to a presumption of whole dependency under R.C. 4123.59, that the commission used an improper standard to determine whether Holderman was incapacitated from earning, and that it did not properly consider the evidence of her disability.  She further argued the commission erred as a matter of law regarding her alternative claim for partial dependency, asserting the commission conflated the standard for establishing a legal presumption of whole dependency with the standard for determining partial dependency based on the specific facts of the case.

{¶ 6}   The magistrate's decision concluded that the commission's decision regarding Holderman's capacity to earn was supported by the evidence of Holderman's work history.  However, the magistrate agreed with Holderman that the commission did not review her claim of partial dependency under the correct standard.  Accordingly, the magistrate recommended that this court deny Holderman's request for a writ of mandamus in part, grant the request in part, and return the case to the commission for further proceedings.

## II. Objections

{¶ 7}   Both Holderman and the commission have objected to the magistrate's decision.  Holderman filed the following objections:

1. The Magistrate improperly returned this case to the Commission on a limited writ of Mandamus for a hearing on partial dependency.

2. The Magistrate did not express the standard of review is de-novo when this Court is interpreting a statute.

3. The magistrate did not apply his own definition of "incapacitated from earning" to Patricia's claim and the magistrate did not define "support" for the purpose of R.C. 4123.59's presumption of whole dependence.

4. The magistrate incorrectly determined the commission can decide physical capacity or incapacity without medical evidence.

{¶ 8} The commission filed the following objections:

1. The catch-all provision of R.C. 4123.59(D) is inapplicable.

2. The magistrate improperly discounted the commission's analysis of the facts.

## III. Analysis

{¶ 9} When considering objections to a magistrate's decision, this court independently reviews the decision and record to ensure that the magistrate "properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). We have the authority to "adopt or reject a magistrate's decision in whole or in part, with or without modification." Civ.R. 53(D)(4)(b).

{¶ 10} In order for a writ of mandamus to lie against the commission, a relator must show that the commission incorrectly interpreted the law or otherwise abused its discretion by reaching a decision that is not supported by any evidence. *See State ex rel. Cassens Corp. v. Indus. Comm.*, 2024-Ohio-526, ¶ 10. If the commission's decision "is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record," we cannot disturb the decision. *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584 (1997). Thus, this court's analysis centers on "whether or not there is evidence to support the findings of the Industrial Commission,

not whether this court agrees with those findings." *State ex rel. Johnson v. Indus. Comm.*, 11 Ohio App.3d 22, 23 (10th Dist. 1983).

{¶ 11} The commission's decision on Holderman's application for death benefits is governed by R.C. 4123.59(D), which provides:

> The following persons are presumed to be wholly dependent for their support upon a deceased employee:
>
> (1) A surviving spouse who was living with the employee at the time of death or a surviving spouse who was separated from the employee at the time of death because of the aggression of the employee;
>
> (2) A child under the age of eighteen years, or twenty-five years if pursuing a full-time educational program while enrolled in an accredited educational institution and program, or over said age if physically or mentally incapacitated from earning, upon only the one parent who is contributing more than one-half of the support for such child and with whom the child is living at the time of the death of such parent, or for whose maintenance such parent was legally liable at the time of the parent's death.
>
> It is presumed that there is sufficient dependency to entitle a surviving natural parent or surviving natural parents, share and share alike, with whom the decedent was living at the time of the decedent's death, to a total minimum award of three thousand dollars.
>
> The administrator may take into consideration any circumstances which, at the time of the death of the decedent, clearly indicate prospective dependency on the part of the claimant and potential support on the part of the decedent. No person shall be considered a prospective dependent unless such person is a member of the family of the deceased employee and bears to the deceased employee the relation of surviving spouse, lineal descendant, ancestor, or brother or sister. The total award for any or all prospective dependency to all such claimants, except to a natural parent or natural parents of the deceased, shall not exceed three thousand dollars to be apportioned among them as the administrator orders.
>
> In all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employee, but no person shall be considered as

dependent unless such person is a member of the family of the deceased employee, or bears to the deceased employee the relation of surviving spouse, lineal descendant, ancestor, or brother or sister.

{¶ 12} Although there are only two enumerated subdivisions in R.C. 4123.59(D), the statutory provision creates at least four categories of people based on their relationship with the decedent at the time of death, and it creates different types of dependency, different burdens of proving dependency, and different benefit payment parameters for those categories of people. In sum, R.C. 4123.59(D) provides that: (1) certain spouses and children are presumed to be wholly dependent on the deceased employee, with weekly payments governed by R.C. 4123.59(B), (2) a live-in parent is presumed to be dependent at an unspecified level, with a minimum payment of $3,000, (3) a person who is a family member *and* a "surviving spouse, lineal descendant, ancestor, or brother or sister" is eligible to prove that they would have been prospectively dependent on the deceased employee, with a maximum payment of $3,000, and (4) a person who is a family member *or* a "surviving spouse, lineal descendant, ancestor, or brother or sister" is eligible to prove that they are partly or wholly dependent on the deceased employee, with weekly payments governed by R.C. 4123.59(B) or (C).

## A. Holderman's objections

{¶ 13} In Holderman's first objection, she argues that this court should determine that she is a partly dependent person rather than returning the case to the commission. Holderman first argues that because the commission denied her motion for reconsideration, the commission is barred from reclaiming continuing jurisdiction over her application for death benefits. Holderman is incorrect; this court is able to return the case to the commission to conduct further analysis even after the commission denies a motion for reconsideration. *See State ex rel. Mazany v. Mentor*, 2025-Ohio-1380, ¶ 22, 40 (10th Dist.). *See also* R.C. 4123.52(A) (providing the commission with continuing jurisdiction over each case). Although the commission does not have the authority to "revisit its own final determinations absent some showing of clear error," *State ex rel. Giant Eagle, Inc. v. Indus. Comm.*, 2019-Ohio-2135, ¶ 27 (10th Dist.), the commission

certainly has the authority to modify a previous order upon a determination from this court that the previous order was premised on an incorrect legal standard.

{¶ 14} Holderman additionally argues the commission's findings of fact demonstrate that she is partly dependent as a matter of law, and that remand for further consideration is unnecessary. She contends that the following facts are dispositive: (1) she is a lineal descendant of the decedent, (2) she lived with the decedent in his home, (3) the decedent paid for all household expenses, including mortgage, utilities, insurance, and groceries, (4) Holderman is a single mother of two children, and (5) Holderman has a job with school food services during the school year and also worked in seasonal food services during the summer. Holderman does not provide any authority indicating that such facts require a finding of partial dependency as a matter of law.

{¶ 15} Whether Holderman is a partly dependent person and, if so, the extent to which she is partly dependent, is a question of fact for the commission to determine. *See State ex rel. Pivk v. Indus. Comm.*, 130 Ohio St. 208, 212 (1935) ("the degree of dependency is a question of fact to be determined by the Industrial Commission from the proof before it"); *State ex rel. McDonald v. Indus. Comm.*, 2023-Ohio-1620, ¶ 17-19. *See also* R.C. 4123.59(D)(2) (requiring dependency in part to be "determined in accordance with the facts in each particular case"). Under the proper legal standards, the commission must determine the factual and legal issues in the first instance "rather than having such issues determined in the first instance by this court in a mandamus action, which is essentially contrary to the purposes of mandamus." *State ex rel. Hayes Lemmerz Internatl. Commercial Hwy., Inc. v. Indus. Comm.*, 2011-Ohio-2161, ¶ 19 (10th Dist.). Accordingly, the magistrate correctly determined that the matter should return to the commission for further consideration, and we overrule Holderman's first objection.

{¶ 16} Holderman's remaining objections relate to her assertion that she is entitled to a presumption of whole dependency. The following children of a deceased employee are presumed to be wholly dependent:

> A child under the age of eighteen years, or twenty-five years if pursuing a full-time educational program while enrolled in an accredited educational institution and program, or over said age if physically or mentally incapacitated from earning, upon only the one parent who is contributing more than one-half of

the support for such child and with whom the child is living at the time of the death of such parent, or for whose maintenance such parent was legally liable at the time of the parent's death.

R.C. 4123.59(D)(2). Holderman claims that proof of her congenital spinal conditions and associated physical limitations establish that she is physically incapacitated from earning. She asserts in her second through fourth objections that the magistrate used various erroneous standards in concluding otherwise.

{¶ 17} In her second objection, Holderman asserts that the magistrate erroneously deferred to the commission's interpretation of the phrase "incapacitated from earning" under R.C. 4123.59(D) by using an abuse of discretion rather than a de novo standard of review. Holderman quotes a passage in which the magistrate allegedly employs an abuse of discretion standard:

> [Holderman] claims she is incapacitated from earning within the meaning of the statute and argues the commission erred in denying her the presumption of being wholly dependent based on her ability to sustain some remunerative employment. [Holderman] also argues that "[n]o requirement exists in statute or common law that one's ability to sustain *any* remunerative employment negates a status of being wholly dependent within the meaning of R.C. 4123.59." (Emphasis in original.) ([Holderman's] Brief at 37.) [Holderman] claims that "the imposition of such a requirement by the Commission" constitutes an abuse of discretion, contending instead that "Ohio courts have historically interpreted 'incapacity' as being generally incapable of sustaining *independent self-support.*" (Emphasis in original.) *Id.*

(Appended Mag.'s Decision at ¶ 55.) The foregoing portion of the magistrate's decision is merely a description of the argument that Holderman herself presented in her brief, not the magistrate's analysis. Contrary to Holderman's claims, the magistrate's decision goes on to include a thorough plain meaning analysis of the phrase "incapacitated from earning" with no deference to the commission. (Appended Mag.'s Decision at ¶ 55.) Accordingly, we overrule Holderman's second objection.

{¶ 18} In her third objection, Holderman contends that she meets the standard of being "incapacitated from earning" under R.C. 4123.59(D) based on the magistrate's

interpretation of the phrase. She notes that part of the magistrate's analysis linked the concept of incapacity with "disability," and she claims that no part of his analysis indicates that incapacity from earning can be disproven by proof of actual work or earning. (Appended Mag.'s Decision at ¶ 58.) She asserts she "presented clear unrebutted evidence of physical disability" and "earned approximately $21,500 a year and was limited due to physical impairment," and therefore established that she was incapacitated from earning. (Holderman's Objs. at 10.)

{¶ 19} Contrary to Holderman's claim, the magistrate's analysis does in fact indicate that an incapacity to earn means an inability to earn money, and conversely that a person's actual earning of money indicates that person is not incapacitated from earning. *See* appended Magistrate's Decision at ¶ 58, 64, discussing *Becker v. Indus. Comm.*, 137 Ohio St. 139, 140-45 (1940). Because the magistrate did not state or imply that actual work is irrelevant to whether a person is "incapacitated from earning," nor did he indicate that the existence of any physical disability whatsoever is dispositive, we overrule Holderman's third objection.

{¶ 20} In her fourth objection, Holderman argues that the commission must provide its own medical evidence to rebut Holderman's proof of her congenital spinal conditions, otherwise it must conclude that she is incapacitated from earning. Holderman notes that her argument presumes that actual "working is not destructive" of a claim of incapacitation from earning, and that "disability *is* relevant" to such a claim. (Emphasis in original.) (Holderman's Objs. at 11.)

{¶ 21} We agree that proof of a person's physical disabilities or limitations is relevant to a determination of whether a person is incapacitated from earning under R.C. 4123.59(D)(2). However, relevance alone does not mean that the evidence is dispositive. A person's physical limitations are one of various factors that the commission may consider in determining whether a person is incapacitated from earning. *See Mazany*, 2025-Ohio-1380, at ¶ 11, 51 (10th Dist.). The commission may also consider whether the person has other attributes that would allow the person to work, such as education, mental and physical abilities, or the ability to drive a car. *See id*. In the context of permanent total disability benefits, the Supreme Court of Ohio explained that actual employment is another factor that the commission should consider when determining a person's

incapacity to earn. *State ex rel. Lawson v. Mondie Forge*, 2004-Ohio-6086, ¶ 16. In fact, "[n]othing demonstrates capacity better than actual performance. No speculation or residual doubt is involved." *Id.* at ¶ 17.

{¶ 22} Our role is not to "micromanage the commission" but rather to "defer to the commission's expertise in evaluating disability." *Mobley*, 78 Ohio St.3d at 584. We cannot interfere with the commission's decision to rely on certain evidence, even if other evidence in the record could conceivably support a different decision. *Id.* The existence of contrary evidence is not dispositive as long as the some evidence standard is met. *State ex rel. Tradesmen Internatl., L.L.C. v. Indus. Comm.*, 2022-Ohio-2935, ¶ 7 (10th Dist.). Although Holderman's proof of her congenital spinal condition was relevant to her claim that she was incapacitated from earning, the commission chose to focus on the fact that Holderman engaged in actual sustained employment before and after the decedent's death. The commission had the power to make that choice, and we cannot disturb it. Accordingly, we overrule Holderman's fourth objection.

## B. The commission's objections

{¶ 23} Turning to the commission's first objection, it argues that because the commission decided that Holderman was prospectively dependent, R.C. 4123.59 does not require the commission to consider whether she is partly dependent-in-fact. And because the commission is not required to make such a consideration, this court cannot return the matter to the commission.

{¶ 24} The commission claims to find support for its argument in *McDonald*, 2023-Ohio-1620. Specifically, *McDonald* includes the following language when describing the commission's determination of dependency in fact under R.C. 4123.59(D): "The question of dependency in all other cases—i.e., cases in which dependency is neither presumed nor prospective—'shall be determined in accordance with the facts in each particular case.'" *Id.* at ¶ 3, quoting R.C. 4123.59(D). In light of the specific choice of phrasing by the Supreme Court, the commission argues that it can determine whether an applicant is a dependent-in-fact if, and only if, it first determines that the dependent is not wholly or prospectively dependent. Thus, the commission concludes "[b]y finding Holderman to be a prospective dependent, the catch-all provision is inapplicable." (Commission's Objs. at 4.)

{¶ 25} The commission's chosen passage from *McDonald* is dicta that merely fits the facts of that case; the commission denied death benefits for the fiancée of the decedent because she was not his spouse, prospective dependency was not at issue, and the fiancée argued that she was entitled to a determination of dependency in fact. *Id.* at ¶ 5. The only question before the Supreme Court in *McDonald* was whether the decedent's fiancée was entitled to a determination of whether she constituted a "member of the family of the deceased employee," which would then entitle her to a determination of dependency in fact under R.C. 4123.59(D). *McDonald* did not provide any substantive analysis of prospective dependency, let alone hold that a finding of prospective dependency allows the commission to ignore an applicant's request for whole or partial dependency in fact. Accordingly, the commission's reliance on *McDonald* is misplaced.

{¶ 26} The commission's argument also fails because it does not account for the difference between prospective dependency and other types of dependency. The question of whole or partial dependency, whether presumed or in fact, looks at needs that existed at the time of the employee's death, where prospective dependency is based on circumstances that indicate future needs. *See Liposchak v. Admr. Bur. of Workers' Comp.*, 138 Ohio App.3d. 368, 381-82 (7th Dist. 2000) (explaining that whole or partial dependency involves a claimant being presently dependent on the employee at the time of death, whereas prospective dependency looks at the claimant's future needs and the potential for support). Whether a person was dependent at the time of an employee's death is a different question from whether a person was likely to be dependent at a future point after the employee's death.

{¶ 27} Accordingly, the commission's determination of Holderman's prospective dependency was not dispositive of her claim of partial dependency in fact, and we overrule the commission's first objection.

{¶ 28} In its second objection, the commission contends the magistrate failed to defer to the commission's findings of fact related to whether Holderman was dependent-in-fact under the final clause of R.C. 4123.59(D)(2). Much like Holderman's argument in her first objection, the commission provides a list of findings of fact from the commission's decision and concludes that the listed facts require the conclusion that Holderman is not dependent-in-fact. The decision denying Holderman's claim does not indicate that the

commission reached its conclusion regarding partial dependency in fact based on those facts. The commission's argument is essentially the same as Holderman's first objection, because it asserts that the existence of certain facts requires a conclusion regarding dependency in fact as a matter of law. The commission's argument fails for the same reason that Holderman's first objection fails. Accordingly, we overrule the commission's second objection.

## IV. Conclusion

{¶ 29} On review of the magistrate's decision, an independent review of the record, and consideration of all objections to the magistrate's decision, we conclude the magistrate has accurately assessed the facts and properly interpreted the law. For the reasons explained above, we overrule both parties' objections and adopt the magistrate's recommendations. We deny Holderman's request for a writ of mandamus in part and leave intact the commission's order to the extent that it found Holderman was not entitled to a presumption of whole dependency. We grant Holderman's request for a writ of mandamus in part and remand for proper consideration of whether Holderman was partly dependent-in-fact.

*Objections overruled*;
*writ of mandamus granted in part and denied in part*; *cause remanded.*

BEATTY BLUNT and EDELSTEIN, JJ., concur.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Darrell W. Holderman c/o Patricia N. Holderman, Child, | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | : | No.  23AP-237 |
| | : | |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on February 5, 2025

*Hochman & Plunkett Co.*, *L.P.A.*, *Gary D. Plunkett*, *Shaun P. Omen*, and *Jenee N. Zweidinger*, for relator.

*Dave Yost*, Attorney General, and *Andrew J. Alatis*, for respondent Industrial Commission of Ohio.

*LL Patterson LLC*, and *Lisa L. Patterson*, for respondent Merchants Security Services of Dayton Ohio Inc.

IN MANDAMUS

{¶ 30} Relator Patricia N. Holderman, the daughter of decedent Darrell W. Holderman ("decedent"), seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders denying death benefits to relator and to issue new orders granting such benefits. For the following reasons, the magistrate recommends granting a limited writ returning this matter to the commission for additional proceedings.

**I. Findings of Fact**

{¶ 31} 1. Decedent was killed in the course of and arising out of his employment as a security officer with respondent Merchant Security Services of Dayton Ohio, Inc. on June 1, 2022. In a first report of injury, occupational disease or death ("FROI-1") form dated June 15, 2022, it was stated that relator was attacked, shot, and killed by the prisoner he was guarding.

{¶ 32} 2. Relator applied for death benefits for herself in an application for death benefits and/or funeral expenses ("C-5") form dated July 22, 2022. In an affidavit dated July 29, 2022, relator, who was 39 years of age at the time of decedent's death, stated that she and her two minor children lived with decedent at his residence since he purchased the residence in 2018. According to relator, decedent was the sole owner of the residence and made all payments on the mortgage and escrow account for the residence. Decedent made all payments for the trash and sewer service and electrical service at the residence. Decedent paid for life insurance policies for relator and each of her two children. Decedent also paid for an automobile insurance policy in which relator was listed as the insured party and for a wireless coverage and cell phone plan that included relator's cell phone. Relator stated that she made no payments on the mortgage or escrow account. Relator also made no payments for trash and sewer service, automobile insurance coverage, electric bills, or wireless coverage and cell phone bills. Furthermore, relator stated in her affidavit that she underwent back surgery on April 15, 2022 and was unable to work from the date of surgery until decedent's death. Relator stated that while she was recovering from surgery, decedent "provided all financial support from [sic] me and my two minor children." (Stip. at 37.)

{¶ 33} 3. In response to a Bureau of Workers' Compensation ("BWC") questionnaire, relator stated that she had lived with decedent "every year of my life except for the years 2008 to approximately 2010." (Stip. at 83.) Prior to her back surgery, relator worked in a school cafeteria and for a friend who owned an ice cream shop. Relator stated that she was not receiving disability benefits, social security benefits, or child support payments.

{¶ 34} 4. In an order dated September 15, 2022, the BWC allowed decedent's claim for death benefits, providing for medical benefits and funeral expenses. The BWC denied relator's C-5 application. While noting relator had two minor children and was sharing expenses with her father, the BWC nevertheless found relator had not met her burden of proof because she was "capable of holding a job and generating her own earnings." (Stip. at 84.)

{¶ 35} 5. On October 19, 2022, a commission district hearing officer ("DHO") conducted a hearing on relator's appeal of the BWC order. In an order dated October 28, 2022, the DHO granted relator's C-5 application to the extent provided in the order. Specifically, the DHO granted relator reimbursement of the decedent's funeral expenses. With regard to dependency benefits, the DHO found insufficient evidence to support that relator was wholly or partially dependent upon decedent. The DHO stated that relator "credibly testified that she required surgery for a back condition which made her unable to work in her position of employment during her recovery, but notes that there is a lack of medical evidence on file regarding [relator's] surgical procedure or documentation regarding her physical or mental capacity." (Stip. at 139.) Furthermore, the DHO found "insufficient evidence that [decedent] was legally liable for support of [relator]." *Id.*

{¶ 36} Finding that relator met her burden of proving by a preponderance of the evidence that she was a lineal descendant prospectively dependent on decedent, the DHO granted relator a $3,000 award as a lump sum payment. The DHO found relator was prospectively dependent based on the decedent's "pledged support during surgery and the subsequent recovery period, and the shared living arrangement established by [relator] and [decedent]." *Id.*

{¶ 37} 6. A commission staff hearing officer ("SHO") conducted a hearing on relator's appeal of the DHO order on December 19, 2022. In an order issued December 22, 2022, the SHO affirmed the DHO's order. The SHO allowed the claim for the death of the decedent and ordered the payment of funeral expenses to relator.

{¶ 38} Examining relator's claim under R.C. 4123.59, the SHO noted relator's testimony:

> [T]he [relator] testified that she was 39 years old at the time of
> the Decedent's death and lived with the Decedent for most of

> her life. She testified that the Decedent owned the home in which they lived with [relator's] children. At the hearing before the [DHO] [relator] testified that she paid $200 or $300 directly to the Decedent from time to time to assist with their living expenses, but that Decedent paid all of the bills directly himself.

(Stip. at 193.) The SHO also noted relator's testimony that she "maintained the inside of the home, did laundry and housekeeping, some meal preparation, and occasional shopping for herself, her children, and the Decedent." *Id*. The relator testified the decedent maintained the exterior and lawn of their residence.

{¶ 39} The SHO recounted relator's testimony regarding her work history as follows:

> [Relator] testified that she worked for Sodexo as a school "lunch lady" during the 180 days of the school year, working seven hours per day, five days per week at a pay rate of $17 per hour. She testified that she underwent surgery in mid April, 2022 and took an unpaid, approved, leave of absence from her job from the time of her surgery through the end of the school year; was not working during the summer that her father was killed, due to that surgery, but returned to work in her position of employment as a lunch lady when the school year began; and has remained working in that position at the same rate of pay and with the same hours of work.

*Id*. Following her surgery, the SHO found that relator was "helped" by decedent from mid-April 2022 until his death on June 1, 2022. The SHO found that relator had not proven that "such help and support was rendered pursuant to any legal obligation." (Stip. at 194.) The SHO found that relator had worked for Sodexo "for multiple years prior to the Decedent's death and now continues to work in this position of employment, earning approximately $21,420 per year." *Id*. Noting relator's testimony that she was "on an approved leave of absence beginning at the approximate time of her surgery and returned to her position of employment as a 'lunch lady' at the beginning of the school year following the Decedent's death," the SHO found relator had "not met her burden to prove that she was 'physically or mentally incapacitated from earning' as described within the statute." *Id*.

{¶ 40} The SHO also found relator had "not proven that the Decedent was 'contributing more than one-half of the support for such child' " based on the following:

> The Attorney for [relator] argued at this hearing that the Decedent paid $874 per month for the mortgage, paid $67 per month for the utilities, paid $110 per month for the Boost Family Plan (phones), paid $200 per month for Spectrum Cable, paid $400 per month for Duke Power, and paid $100 per month for car insurance; amounting to $1751 per month. However, upon questioning of [relator], she admitted that such bills were for the four people in the household. The mortgage was in the Decedent's name and was his legal obligation; the Boost Mobile Family Plan was for three phones; the utilities, Duke power, and cable bill were for the household of four people; and the car insurance was for both the Decedent's car and for the [relator's] car. In essence rather than providing $1751 per month in assistance as argued by the Attorney for the Injured Worker [sic], if the cited figures were accepted, the Decedent provided approximately one-fourth of that amount in financial support for [relator], amounting to approximately $440 per month.

> Given that [relator] admitted to earning approximately $21,420 per year, or approximately $1785 per month, or approximately $1200 per month after taxes, the [SHO] finds that [relator] has not met her burden to prove that the financial support provided directly to [relator] by the Decedent was 50% or greater, as described within the statute.

*Id.*

{¶ 41} The SHO found that "[relator's] credibility has been called into question by the [relator's] contradictory testimony given under oath at the hearing before the [DHO] and at the hearing before this [SHO]." The SHO found that the record of relator's testimony before the DHO reflected that relator "described '. . . that there was a couple years I did work at the Root Beer Stande in the summer, to try to help pick up income that way.' " *Id.* The SHO contrasted this with relator's testimony before the SHO when, according to the SHO, relator "testified under oath that she worked every year at the Root Beer Stande during the summer." *Id.* The SHO found this testimony to be "relevant when assessing the nature of [relator's] pattern of employment." *Id.* With regard to relator's pattern of employment, the SHO found:

> [I]t appears from [relator's] testimony that during some summers, when school was not in session, [relator] did not engage in employment although she had not left the workforce. The [SHO] finds that [relator] has consistently testified that during the summer of 2022 the Root Beer Stande

had closed after it had been sold by the previous owners. Given the non-availability of work at the Root Beer Stande for reasons unrelated to [relator's] surgery, and given [relator's] status after her April, 2022 surgery as being on an unpaid, approved leave of absence with a job to return to at the start of the then-coming school year, the [SHO] finds that [relator] was not "incapacitated" from earning by her surgery, but chose to have her surgery during the time when she had not arranged to have any employment, but still retained the physical capacity to earn when the school year began.

(Stip. at 194-95.)

{¶ 42} Next, regarding whole or partial dependency, the SHO found relator was living with decedent at the time of his death and was a lineal descendent of decedent, but found that relator was not wholly or partially dependent on decedent. The SHO found that relator was not a surviving spouse, minor child, enrolled in school full-time, or physically or mentally incapacitated from earning more than one-half of her support from decedent. The SHO found there was insufficient evidence to show decedent was legally liable to support relator. Based on those reasons, the SHO found insufficient evidence to support relator was wholly or partially dependent upon decedent. (Stip. at 195.)

{¶ 43} Finally, the SHO also found relator to be a prospective dependent of the decedent, making the following findings in support of the award:

The SHO finds that [relator] . . . has met her burden to prove, by a preponderance of the evidence, that she was a lineal [descendant] prospectively dependent upon the [decedent], and on that basis, is entitled to an award of $3000, granted as a lump-sum, as a prospective [dependent] of the [decedent], based upon the [decedent's] ple[d]ged support during the [relator's] surgery and subsequent recovery, which ended in August, 2022; their shared living arrangement; and the familial generosity of the [decedent].

*Id.*

{¶ 44} 7. Relator commenced this original action by filing her petition for writ of mandamus on April 14, 2023.

## II. Discussion and Conclusions of Law

{¶ 45} Relator asserts entitlement to a writ of mandamus ordering the commission to grant relator benefits under R.C. 4123.59.

## A. Requirements for Mandamus

{¶ 46} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A writ of mandamus will issue where "there is a legal basis to compel the commission to perform its clear legal duty under the law, including when the commission has abused its discretion in carrying out its duties." *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 2018-Ohio-2122, ¶ 25. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm. of Ohio*, 78 Ohio St.3d 579, 584 (1997). Additionally, a writ of mandamus " 'may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law.' " *State ex rel. Cassens Corp. v. Indus. Comm. of Ohio*, 2024-Ohio-526, ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

## B. Death Benefits for Dependent Individuals Under R.C. 4123.59

{¶ 47} R.C. 4123.59 provides benefits in the event of an injury or occupational disease resulting in the death of an employee to wholly or partly dependent individuals as specified by the statute. *See State ex rel. PolyOne Corp. v. Indus. Comm. of Ohio*, 2014-Ohio-1376, ¶ 9 (10th Dist.), quoting *Fulton, Ohio Workers Compensation Law*, Section 11.3, at 531 (4th Ed. 2011) (stating that "the intent of R.C. 4123.59 is to compensate dependents for the 'loss of support' resulting from the employee's death"). R.C. 4123.59(C) specifies the payments for a partly dependent person, providing that such payments "continue for such time as the administrator in each case determines."

{¶ 48} R.C. 4123.59(B) specifies the payments for a wholly dependent person, including the conditions under which such payments shall cease. With regard to the termination of payments for wholly dependent persons other than spouses, R.C. 4123.59(B)(2) provides:

> That portion of the payment provided in division (B) of this section applicable to wholly dependent persons other than a spouse shall continue from the date of death of an injured or disabled employee to a dependent as of the date of death, other than a spouse, at the weekly amount determined to be applicable and being paid to such dependent other than a spouse, until the dependent:
>
> (a) Reaches eighteen years of age;
>
> (b) If pursuing a full time educational program while enrolled in an accredited educational institution and program, reaches twenty-five years of age;
>
> (c) If mentally or physically incapacitated from having any earnings, is no longer so incapacitated.

*See also* R.C. 4123.59(B)(3) (creating exception to R.C. 4123.59(B)(2)(c) for employment in a "sheltered workshop").

{¶ 49} R.C. 4123.59(D) outlines circumstances under which a person is presumed to be wholly dependent, addresses prospective dependency, and includes a catch-all provision. With regard to a presumption that a person is wholly dependent, the statute provides as follows:

> The following persons are presumed to be wholly dependent for their support upon a deceased employee:
>
> (1) A surviving spouse who was living with the employee at the time of death or a surviving spouse who was separated from the employee at the time of death because of the aggression of the employee;
>
> (2) A child under the age of eighteen years, or twenty-five years if pursuing a full-time educational program while enrolled in an accredited educational institution and program, or over said age if physically or mentally incapacitated from earning, upon only the one parent who is contributing more than one-half of the support for such child and with whom the child is living at the time of the death of such parent, or for whose maintenance such parent was legally liable at the time of the parent's death.
>
> It is presumed that there is sufficient dependency to entitle a surviving natural parent or surviving natural parents, share and share alike, with whom the decedent was living at the time of the decedent's death, to a total minimum award of three thousand dollars.

R.C. 4123.59(D). Prospective dependency is addressed as follows:

> The administrator may take into consideration any circumstances which, at the time of the death of the decedent, clearly indicate prospective dependency on the part of the claimant and potential support on the part of the decedent. No person shall be considered a prospective dependent unless such person is a member of the family of the deceased employee and bears to the deceased employee the relation of surviving spouse, lineal descendant, ancestor, or brother or sister. The total award for any or all prospective dependency to all such claimants, except to a natural parent or natural parents of the deceased, shall not exceed three thousand dollars to be apportioned among them as the administrator orders.

*Id.* Finally, the last paragraph of R.C. 4123.59(D) applies to claims for death benefits brought by individuals who are not entitled to a presumption of dependency, providing as follows:

> In all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employee, but no person shall be considered as dependent unless such person is a member of the family of the deceased employee, or bears to the deceased employee the relation of surviving spouse, lineal descendant, ancestor, or brother or sister.

*Id. See State ex rel. McDonald v. Indus. Comm.*, 2023-Ohio-1620, ¶ 9 (noting, for example, that even a surviving spouse may not be presumed wholly dependent if, at the time of the employee's death, the surviving spouse was not living with the employee and was not separated from the employee because of the employee's aggression). "For persons who are not entitled to the presumption of dependency, the last paragraph of R.C. 4123.59(D) instructs that actual dependency, in whole or in part, must be determined according to the facts that existed at the time of the injury that resulted in the employee's death." *McDonald* at ¶ 9.

{¶ 50} If no individuals are found to be dependent on the deceased employee, R.C. 4123.59(A) limits disbursements from state fund to funeral or other covered expenses as provided under R.C. 4123.66.

**C. Whether Relator Established Dependency Under R.C. 4123.59**

{¶ 51} Relator asserts the commission erred and abused its discretion in several ways by denying relator's request for death benefits. Relator's arguments regarding the presumption of being wholly dependent will be addressed first.

1. *Whether Relator Established Presumption of Being Wholly Dependent*

{¶ 52} In order for a child of a deceased employee to be presumed to be wholly dependent, the child must meet the requirements of R.C. 4123.59(D)(2). R.C. 4123.59(D)(2) sets different requirements based on the age of the child seeking the presumption. Relator was not "[a] child *under the age of* **eighteen** years, or **twenty-five** years if pursuing a full-time educational program while enrolled in an accredited educational institution and program." (Emphasis added.) R.C. 4123.59(D)(2). As a child "over said age," relator is "presumed to be wholly dependent for [her] support upon [the decedent] . . . if physically or mentally incapacitated from earning, *upon only the one parent* who is contributing more than one-half of the support for such child and with whom the child is living at the time of the death of such parent, *or for whose maintenance such parent* was legally liable at the time of the parent's death." (Emphasis added.) R.C. 4123.59(D)(2).[1] Thus, a child who is not under the listed ages in the statute has two different options to establish entitlement to the presumption.

{¶ 53} As will be discussed further below, it is undisputed that decedent was not legally liable for relator's maintenance at the time of his death. Because she was foreclosed from being presumed wholly dependent under that option, relator was required to establish that she was: (1) physically or mentally incapacitated from earning, (2) dependent upon only decedent who was contributing more than one-half of the support for her, and (3) living with decedent at the time of his death. It is also undisputed that relator was living with decedent at the time of his death. Therefore, entitlement to the presumption depends on the resolution of the first two factors.

---

[1] Emphasis has been added in an attempt to improve the text's readability. The statute's convoluted phrasing and sparse numbering make it difficult to parse. This can perhaps be attributed to the fact that the statute has been amended several times over its lengthy history, dating back to the General Code. *See, e.g., State ex rel. Person v. Indus. Comm. of Ohio*, 126 Ohio St. 85, 88 (1932) (discussing then-numbered Section 1465-82 of the General Code, which addressed the "persons . . . presumed to be wholly dependent for support upon a deceased employe").

{¶ 54} Relator claims she is incapacitated from earning within the meaning of the statute and argues the commission erred in denying her the presumption of being wholly dependent based on her ability to sustain some remunerative employment. Relator also argues that "[n]o requirement exists in statute or common law that one's ability to sustain *any* remunerative employment negates a status of being wholly dependent within the meaning of R.C. 4123.59." (Emphasis in original.) (Relator's Brief at 37.) Relator claims that "the imposition of such a requirement by the Commission" constitutes an abuse of discretion, contending instead that "Ohio courts have historically interpreted 'incapacity' as being generally incapable of sustaining *independent self-support.*" (Emphasis in original.) *Id.*

{¶ 55} First, the SHO did not expressly find relator failed to establish she was incapacitated from earning because of her ability to sustain some remunerative employment. In fact, the SHO's order contains no reference to a requirement involving sustained remunerative employment.

{¶ 56} Second, the phrase "incapacitated from earning" is not defined in the statute. "To determine the plain meaning of a statute, a court relies on the definitions provided by the legislative body." *Lingle v. State*, 2020-Ohio-6788, ¶ 15. If a term is not defined in the statute, a court must give the term its "plain and ordinary meaning." *Rhodes v. New Philadelphia*, 2011-Ohio-3279, ¶ 17. A court ascertaining the plain meaning of a statute must consider " 'the particular statutory language at issue, as well as the language and design of the statute as a whole.' " *Lingle* at ¶ 15, quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988). *See Rancho Cincinnati Rivers, L.L.C. v. Warren Cty. Bd. of Revision*, 2021-Ohio-2798, ¶ 21 ("To discern the plain meaning of statutory text, we consult not only lexical sources such as dictionaries, but also the meaning that the words have acquired when they are used in case law.").

{¶ 57} The term "incapacitate" has been defined as "[t]o make (someone) too weak or too ill to work or function normally." *Black's Law Dictionary* 906 (12th Ed. 2024.). The term "incapacity" has been defined as the "physical or mental inability to do something." *New Oxford American Dictionary* 877 (3d Ed. 2010). *See Black's* at 906 (defining "incapacity" as "lack of physical or mental capabilities" or "disability"). The phrase "earning capacity" has been defined as "[a] person's ability or power to earn money, given

the person's talent, skills, training, and experience." *Black's* at 642. Though cases examining this factor are rare, the factual circumstances of the individual case have been found to be determinative. *See Becker v. Indus. Comm. of Ohio*, 137 Ohio St. 139, 140-45 (1940) (finding under a former version of the statute that "the record sustains the claim that the adult son was physically incapacitated from earning his own living" where the "claimant had been without employment, had been ill and, as claimed by him, had been unable to work").

{¶ 58} Relying on a decision of the Seventh District Court of Appeals, relator argues the determination of whether she was physically or mentally incapacitated from earning should be based on whether relator's ability to work is a " 'resource reasonably available for independent self-support.' " *Wheeling Steel Corp. v. Morates*, 120 Ohio App. 315, 317 (7th Dist. 1963), quoting 2 *Larson's Workmen's Compensation Law*, 109.

{¶ 59} In *Wheeling*, the claimant, who was the adult daughter of the deceased employee, did not qualify to be presumed wholly dependent under the terms of the statute and, instead, attempted to prove dependency in fact. The claimant presented evidence showing that she was being supported by her father, was keeping house for him, had no income of her own, and that she and her father were both satisfied with this arrangement and intended for it to continue. Referring to a dictionary, the court found that "dependent" meant: "(1) Relying on or subject to someone else for support, and (2) unable to exist or sustain oneself without support or aid." *Id.* at 316. The court found the claimant met the first definition of dependent under the facts of the case and noted that "[o]ther states have been almost unanimous in saying that a dependent is one who is sustained by another or who relies wholly or in part upon a workman for the reasonable necessities of life." *Id.* Additionally, the court approved of the following statement:

> "The Massachusetts and Wisconsin courts distinguished a type of adult-dependent case in which the claimant's abilities were not a resource reasonably available for independent self-support: the case of the adult daughter who stays home all her life and takes care of her father. The daughter's ability to work is not an available source of independent income, since it is committed to the task of housekeeping for decedent. The cases uniformly permit a finding of dependency on such facts, even when the daughter has given up an income-producing job to take care of her father or mother."

*Id.* at ¶ 317, quoting 2 *Larson's Workmen's Compensation Law*, 109. As a result, the court rejected the argument that a legal obligation of support was required to prove dependency.

{¶ 60} *Wheeling* is not dispositive of the issue presented in this matter. Initially, the magistrate notes that, as a decision of another court of appeals, *Wheeling* is not binding authority on this court. *State ex rel. Adams v. Indus. Comm. of Ohio*, 2023-Ohio-128, ¶ 27 (10th Dist.). Next, the court in *Wheeling* was not analyzing the meaning of the term "dependent" to resolve whether the presumption of dependency applied based on incapacitation from earning. Rather, the court was considering the meaning of the term "dependent" to determine whether the claimant established actual dependency. By pointing to the definition of "dependent" to resolve the question of whether relator was physically or mentally incapacitated from earning, relator conflates the ultimate issue of actual dependency with the statutory presumption for being wholly dependent.

{¶ 61} Furthermore, the facts in *Wheeling* are decidedly different from those in this case. Unlike the claimant in *Wheeling*, who was not working outside of the home, relator was working, having been employed for years by Sodexo. During the school year, relator worked five days per week for seven hours a day. She had also previously worked during the summers for the Root Beer Stande. The SHO relied on this work history in finding that relator had not met her burden of proving she was physically or mentally incapacitated from earning. As relator's work history was some evidence upon which the commission could base its determination that relator was not physically or mentally incapacitated from earning, relator has not demonstrated such determination was an abuse of discretion.

{¶ 62} In addition to *Wheeling*, relator also points to another decision of the Seventh District Court of Appeals: *Liposchak v. Admr., Bur. of Workers' Comp.*, 138 Ohio App.3d 368 (7th Dist. 2000). *Liposchak* does not address the meaning of "incapacitated from earning" because it dealt with a different presumption for dependency. Specifically, the court in that case found the claimant, who was the parent of the decedent, was not eligible for the presumption of dependency benefits for a parent under R.C. 4123.59(D)(2) because she did not live with the decedent at the time of his death. Relator also cites a number of other decisions, including a federal bankruptcy decision and decisions of other

state courts. None of these decisions resolve the question presented under Ohio law with regard to the presumption of dependency.

{¶ 63} Relator also argues the determination of her "residual functional capacity to work necessarily involves a medical analysis." (Relator's Brief at 39.) Relator argues that the unrebutted medical evidence supports finding relator physically incapacitated from earning. Relatedly, relator argues that the commission abused its discretion by making a medical determination of relator's capacity without citing to the unrebutted evidence in the claim. To the contrary, the commission did not make a medical determination, nor was it required to do so under the facts in evidence. Based on the evidence in the record regarding relator's work history, which was relied upon by the SHO, it was not necessary for the commission to engage in a medical analysis of whether relator is physically or mentally incapacitated from earning. Relator was working both before and after decedent's death. This was some evidence upon which the SHO could rely in determining that relator was not physically or mentally incapacitated from earning. *Compare Becker* at 140. As a result, relator has not demonstrated the commission abused its discretion by finding relator failed to qualify for the presumption of being wholly dependent.

{¶ 64} Next, relator argues the SHO erred by determining that relator had not established decedent was contributing more than one-half of the support for relator. Having found that the commission did not abuse its discretion by finding relator was not physically or mentally incapacitated from earning, relator is unable to meet the requirements for establishing a presumption of dependency under R.C. 4123.59(D)(2). Therefore, it is unnecessary to address this finding.

{¶ 65} Relator next argues the commission erred by requiring her to show that decedent was legally obligated to provide her with support in order to be presumed wholly dependent. However, the commission did not require this as the *only* way for relator to show that she was entitled to the presumption. Again, there are two alternatives to establish entitlement to the presumption for a child over the listed ages. The SHO considered whether relator established entitlement to the presumption under either option, concluding with regard to one that relator did not establish decedent was legally liable for her maintenance at the time of his death. The SHO then considered whether relator met the requirements for the other option. Moreover, relator does not argue—nor

does the record support—that the decedent was legally liable for relator's maintenance at the time of his death. As a result, it was not error to find relator had failed to establish entitlement to the presumption on this basis.

2. *Whether Relator Established Actual Dependency in Whole or Part*

{¶ 66} Relator argues the commission abused its discretion by commingling the analysis for whole and partial dependency. Relator argues that where a familial relationship is undisputed, the analysis of whether a person is wholly or partially dependent "must boil down to fact-based determinations." (Relator's Brief at 29.)[2] The SHO made the following findings regarding whole or partial disability dependency:

> The [SHO] finds that [relator] was living with the [decedent] at the time of his death, is a lineal descendant of the [decedent], but does not find that [relator] was wholly or partially dependent upon [decedent]. The [SHO] finds that [relator] is not a Surviving Spouse, was not a minor child, was not enrolled in school full time, and has not met her burden to prove that she was physically or mentally incapacitated from earning with more than one-half of her support from [decedent]. The [SHO] finds that there is insufficient evidence that [decedent] was legally liable to support [relator]. **For these reasons**, the [SHO] finds insufficient evidence to support that [relator] was wholly or partially dependent upon the [decedent].

(Emphasis added.) (Stip. at 195.)

{¶ 67} The SHO's analysis of the question of actual dependency, in whole or in part, appears to be based entirely on analysis of the factors pertaining to the presumption of dependency. However, as previously noted, the final paragraph of R.C. 4123.59(D) contains a catch-all provision for actual dependency. Interpreting this provision, the

---

[2] Relator states that "R.C. 4123.59(D)(2) requires the Commission to determine 'the question of dependency, . . . *in part*, . . . in accordance with the facts [of the] case existing at the time of the injury resulting in the death' of the decedent in conjunction with the recognition of a familial relationship." (Ellipses and emphasis in original.) (Relator's Brief at 28-29.) The removed portions of the statute in relator's quote, however, create a misleading impression that the determination of dependency is to be made only "in part" in accordance with the facts of the case. The complete text of that portion of the statute provides that "[i]n all other cases, the question of dependency, **in whole or in part**, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employee." (Emphasis added.) R.C. 4123.59. Seen in its complete form, the text makes clear that the question of either whole or partial dependency is required to be determined in accordance with the facts of each case, not just partially on that basis. *See McDonald*, 2023-Ohio-1620, at ¶ 9.

Supreme Court of Ohio has stated that "[f]or persons who are *not entitled to the presumption of dependency*, the last paragraph of R.C. 4123.59(D) instructs that actual dependency, in whole or in part, must be determined according to the facts that existed at the time of the injury that resulted in the employee's death." (Emphasis added.) *McDonald*, 2023-Ohio-1620, at ¶ 9. *See Becker*, 137 Ohio St. at 144 (stating with regard to a former version of the statute that "[w]ithin the limits of the classes of persons and circumstances named in the statute, total or partial dependency or dependency in any degree depends upon the evidence, the presumption or lack of presumption of total dependency in any case operating only to determine who has the burden to proceed and to produce evidence on the subject, dependency being a question of fact in each particular case"). By confining analysis of the issue of actual dependency to the factors needed to establish the presumption instead of determining the issue under the totality of facts and circumstances in the case, the SHO erred as a matter of law. *See generally Cassens*, 2024-Ohio-526, at ¶ 10

{¶ 68} In making this finding, the magistrate notes that the same evidence relied upon by the commission with regard to the presumption of dependency may be relevant in resolving the question of whether relator established actual dependency in whole or in part. However, in making a finding with regard to this question, the commission must sufficiently, if briefly, explain the reasoning for its decision. *See State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991). By recounting factors relevant to the presumption of dependency and stating only that there was "insufficient evidence" to support finding relator established actual dependency in whole or part, the SHO's order does not contain sufficient reasoning for its decision. *See State ex rel. Gonzalez v. Lewis Tree Serv.*, 2011-Ohio-6816, ¶ 9 (10th Dist.) (stating that commission's finding that the "decedent's representative did not meet his burden of proof to establish that decedent's parents were wholly dependent upon him at the time of his death" might have "provide[d] the basis for [the commission's] decision," but was not sufficient under *Noll* to briefly explain the reasoning for the decision). As the determination of actual dependency, in whole or in part, depends on the facts of the case, the magistrate finds it appropriate to issue a limited writ remanding this matter to the commission to make the determination in the first instance.

*See McDonald* at ¶ 20 (affirming granting of a limited writ directing commission to determine extent of dependency if conditions for consideration of actual dependency met).

3. *Whether Commission Abused Its Discretion Regarding Credibility Determination*

{¶ 69} Finally, relator argues the commission abused its discretion by questioning relator's credibility based on presumptions purportedly lacking evidentiary support and then relying on such presumptions to deny dependency benefits. "In matters before it, the commission is the exclusive evaluator of the weight and credibility of the evidence." *State ex rel. Neitzelt v. Indus. Comm.*, 2020-Ohio-1453, ¶ 10. *See State ex rel. LTV Steel Co. v. Indus. Comm.*, 88 Ohio St.3d 284, 287 (2000) (stating that "[t]he commission is the exclusive evaluator of weight and credibility, and as long as some evidence supports the commission's decision, reviewing courts must defer to its judgment"). In this matter, the SHO noted differences between relator's testimony at the DHO and SHO hearings regarding her work history with the Root Beer Stande. The SHO found this testimony to be relevant in determining whether relator established she was incapacitated from earning. Whether this court may have reached a different conclusion regarding relator's credibility based on this testimony is irrelevant for purposes of this mandamus action. The commission exercised its discretion as the exclusive evaluator of credibility and some evidence supported the commission's determination. As a result, relator has not shown the commission abused its discretion with regard to the credibility determination.

**D. Conclusion**

{¶ 70} Accordingly, it is the decision and recommendation of the magistrate that this court should issue a limited writ remanding this matter to the commission to determine the question of actual dependency consistent with law and this decision.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.